MARTHA O'KIEFFE, APPELLANT, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL., APPELLEES.

FILED JULY 11, 1914.    No. 17,648.

1. **Waters:** DRAINAGE: INJUNCTION. An injunction will not be granted at the suit of a landowner to restrain the construction of ditches and drains for the purpose of draining a small lake unless the evidence clearly shows that the water drained will flow upon the land of the plaintiff.

2. ———. *Davis v. Londgreen*, 8 Neb. 43, followed.

APPEAL from the district court for Grant county: JAMES R. HANNA, JUDGE. *Affirmed as modified.*

*William Mitchell,* for appellant.

*Byron Clark, Sullivan & Squires* and *Boyd & Barker,* contra.

LETTON, J.

On a portion of section 19, township 43, range 36, in Grant county, there is a shallow and swampy lake covering from 160 to 300 acres. The depth varies; in some years the water is five feet deep in the deepest portions, while in the dry seasons the water recedes and the area of the water is much reduced. There is usually, however, from one to four feet of water in the lake. In at least one of the years since that portion of the state was settled the lake bed became entirely dry. Grass and rushes cover the shallow or dry portion of the lake as the waters recede.

The plaintiff is the owner of a tract of land about two miles east of this lake and lying at a lower elevation. The track of the Chicago, Burlington & Quincy Railroad Company crosses the lake upon an embankment. The water standing upon each side of the track makes it difficult to keep in repair. Defendant Moran owns the greater part of the land covered by the lake. He desired to increase his hay grounds. Moran entered into a contract with the defendant railroad company by which it was to furnish the tile, and Moran was to furnish the labor, to drain this lake through tile and open ditches upon the right of way of the railway company to a point upon the land of one Carpenter, who owns the tract adjoining plaintiff on the west, and who had given his consent in writing to the railroad company that this might be done. It is shown that Carpenter's land at the point where this water would be discharged was about 21 feet higher than a portion of plaintiff's land which is used as a hay meadow, and which she claims would be flooded if this drainage scheme is carried out. The town of Whitman lies about a mile east of the lake. It is shown that it is necessary to excavate the

ditch on the right of way about 13 feet at that point in order to lay the tile at the depth proposed in the plan of drainage. The testimony on behalf of plaintiff is to the effect that the water in the lake would be required to be four feet higher than it is now before it could flow eastward through Whitman. The defendants' testimony seems to indicate that about ten years ago there was a slight swale curving through the town of Whitman, through which, after the lake was full to the rim, its overflow waters might run to the eastward, but that soon after the construction of the railroad, about 18 or 20 years ago, this lower space was filled in by the inhabitants and the railroad company. Plaintiff's evidence tends to prove that, judging from the size of the lake and the capacity of the drain pipe, her meadow land would be completely submerged; while defendants' proof is to the effect that by the use of a ten-inch drain tile the drainage would be carried on so slowly that the evaporation and the percolation from that portion of the route where the water is carried in open ditches and is broadened out in wide depressions would be so great that no water would ever reach the plaintiff's land. It is also to the effect that it would take at least two years to drain the lake through a ten-inch tile as contemplated, and that much less than one-tenth of an inch would be spread over Carpenter's land. The plaintiff brings this action to restrain the defendants from discharging the waters of the lake upon her land by means of the tile and open ditches contemplated. The district court found for defendants, and dismissed her action.

As we have shown, the testimony is conflicting. The plats and profiles clearly show that the general slope of the ground from the town of Whitman is to the eastward; but we are not convinced that before the railroad was built there was any natural channel or waterway through which the flood waters of the lake, if any, would have reached the plaintiff's land. If, therefore, the waters of the lake are carried by the drains and ditches two miles to the eastward and artificially discharged upon the plaintiff's land to her damage, the rule in *Davis v. Londgreen,*

8 Neb. 43, *Bunderson v. Burlington & M. R. R. Co.*, 43 Neb. 545, *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb. 138, and *Jacobson v. Van Boening*, 48 Neb. 80, governs, and the principles laid down in *Todd v. York County*, 72 Neb. 207, *Aldritt v. Fleischauer*, 74 Neb. 66, and *Arthur v. Glover*, 82 Neb. 528, do not apply.

On the other hand the evidence as to evaporation and percolation through the sandy soil is such that it seems very probable that the water will never reach plaintiff's land, and we think it has not been established that the plaintiff will ever suffer any damages from the completion of the work.

The judgment of the district court, however, should be and is modified so that it be without prejudice to the rights of plaintiff to maintain an action for damages, if any, which may result to plaintiff from the construction of the ditches and drains, and, as so modified, is affirmed, at appellant's costs.

AFFIRMED AS MODIFIED.

ROSE, FAWCETT and SEDGWICK, JJ., not sitting.