## Marius A. Heffner et al.
### v.
## Cass and Morgan Counties.

*Opinion filed December 18, 1901.*

1. COUNTIES—*property held by county is not private property.* Counties are but political subdivisions of the State, and are subject to the full control of the State, acting, by general law, through the legislature; and the property held by counties is not private but public property.

2. SAME—*public highways and bridges do not belong to the counties or towns constructing them.* Public highways, and bridges on them, do not belong to the counties or towns which construct them, but are held by them in trust for the entire public,

3. DRAINAGE—*third proviso to section 55 of Levee act construed.* The third proviso of section 55 of the Levee act of 1879, as amended in 1885, (Laws of 1885, p. 133,) is not limited in its application to railroad corporations or private corporations mentioned in the second proviso, but applies to all corporations mentioned in the body of the section, including public corporations having control of public roads and bridges.

4. SAME — *drainage districts are public corporations.* Since the amendment of the constitution in 1878 by adopting section 31 of article 4, relating to drainage, drainage districts organized under statutes passed in pursuance of such amendment are regarded as public corporations.

5. CONSTITUTIONAL LAW—*third proviso of section 55 of the Levee act considered.* The provisions of the third proviso of section 55 of the Levee act of 1879, as amended in 1885, which authorize drainage commissioners to remove public bridges on public highways, when necessary for the construction of ditches, without paying damages to the public road authorities for such removal, are not unconstitutional, as authorizing a taking or damaging of private property for public use without compensation.

6. SAME—*third proviso to section 55 of Levee act is not unconstitutional.* It is within the power of the legislature to authorize drainage commissioners to remove bridges from public roads, when necessary for the construction of ditches, without payment of damages to the county which constructed the bridge; nor is it a violation of sections 9 and 10 of the constitution to require the cost of a new bridge to be paid from the public revenues of the county.

CARTWRIGHT, BOGGS and HAND, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. O. P. THOMPSON, Judge, presiding.

This action of trespass was commenced in the circuit court of Morgan county on May 1, 1900, by the defendants in error, Cass and Morgan counties, against the plaintiffs in error, Marius A. Heffner, Thomas Naylor and Louis C. Hackman, to recover damages for the removal of the bridge hereinafter described, constructed over Mud creek, and used and occupied by defendants in error at a point where the said creek is crossed by a public road running from Arenzville, in Cass county, to Meredosia, in Morgan county, at or near the county line between said counties.

The declaration consists of two counts. The first count charges that the defendants in error, plaintiffs below, were the joint owners of an iron and steel bridge over Mud creek, on what is known as the Arenzville and Meredosia public highway, near the county line between the county of Cass and the county of Morgan, the same having been recognized for a number of years as a joint bridge built jointly by said counties; that it was the duty of said counties jointly to keep said bridge in repair and maintain the same; that defendants, on April 1, 1900, entered that part of said road over which said bridge was erected and upon which plaintiffs had an easement of possession, for the purpose of erecting and maintaining the said bridge, and where plaintiffs had for a long time maintained said bridge across said creek at the crossing of said creek by the highway, for the use of the public traveling the same; that defendants then and there broke said bridge to pieces and removed the same from its place at said crossing, and rendered the same useless; that then and there defendants dug a drainage ditch or excavation across said road at the place aforesaid, jointly owned by the plaintiffs, by deepening Mud creek and widening the same, said ditch being some forty-five feet wide and fifteen feet deep, and by moving large quantities of earth therefrom; that it was thereby made necessary for plaintiffs, in order to accommodate the public passing along said highway, to construct another bridge

with a span some sixty feet in length; that the expense of building said bridge of sufficient length and strength to accommodate the public passing along the highway, and to enable them to cross said ditch or drain or excavation, amounted to the sum of $1200; that said ditch was dug and the bridge removed without the license of the plaintiffs and against their will, to the damage of the plaintiffs of $5000.

The second count charges that the bridge was located in the county of Morgan and near to the line between the two counties of Morgan and Cass, and in township 16, range 12, west; that the bridge had been built jointly by the two counties and maintained for the use of the public traveling said highway, and was an iron and steel bridge of the value of $400, being used as a public bridge for the use of the public of both counties in passing over said road; that the defendants, on November 1, 1899, and on divers other days, entered the close belonging to the plaintiffs as an easement for said uses and purposes, the place being situated in Morgan county, and tore up, excavated and removed the earth from a great part of the same, by excavating a drainage ditch, water-way, sloughway or drainage canal across said roadway where plaintiffs had the appurtenances aforesaid, and where they owned and maintained said bridge for the use of the public, excavating the same to the width of forty-five feet and depth of fifteen feet, and made other excavations, thereby necessitating an expenditure by the plaintiffs of $1200 to build, construct and maintain another bridge.

To this declaration the defendants filed a plea of not guilty, and three special pleas.

The first special plea avers that before the committing of the alleged grievance there had been formed a corporation known as the "Mud Creek Drainage District;" that said district was formed under and according to the provisions of the statute in such cases made and provided; that the defendants were then, and before that,

duly appointed and qualified drainage commissioners of the said Mud creek drainage district, and were then and there acting as such commissioners and in the drainage district; that said district included territory on both sides of Mud creek, which was then and there a natural water-course; that said bridge was situated across said creek within said drainage district on the line of the main ditch of the district as organized by the county court of Cass county; that in order to make said drainage district effective, and to accomplish the purpose for which it was organized, it was necessary to deepen and widen Mud creek at the place where said bridge was situated; that in order to make the creek of sufficient depth and width to carry off water and drain the district it was necessary to deepen and widen the creek, and that said bridge would become useless and of no value as a bridge at the place where it was then located; that according to the provisions of the statute in such case made and provided it became the duty of the commissioners of said drainage district to remove said bridge, so that the same would not obstruct the work of constructing said drain in the district aforesaid; that defendants, as commissioners of said district, removed the bridge from its then location, so as to clear the obstruction to the work of constructing such drain within said district, doing no more damage to the bridge than was necessary to remove it from its location and out of the way of constructing the ditch or drain, as they lawfully might; that the trespasses complained of in the declaration are the same trespasses above mentioned, and no other.

The second special plea is substantially the same as the first, with the additional averment that said bridge is situated in road district No. 4, in Morgan county, and that an assessment of damages to and benefits against said road district was made in the county court of Cass county under the statute in such case made and provided,

and that the balance of benefits so assessed against said road district is the sum of $52.75.

The third special plea is, in substance, the same as the second, with the additional averment that under the statute the defendants, as drainage commissioners, had lawful authority to remove the bridge.

The plaintiffs below filed demurrers to the three special pleas, which demurrers the court below sustained. The cause went to trial upon the issue formed by the plea of not guilty.

The defendants below sought to defend upon the ground that they were acting, not as individuals, but as commissioners of the Mud creek drainage district, legally and duly appointed as such, and, therefore, were acting under an order of the court, and were not liable personally for what was done in obedience to that order.

The trial court admitted in evidence the transcript of the record of the Cass county court organizing the district. This transcript shows the filing of a petition by more than one-half of the adult land owners of the proposed district; that the petitioners were owners of more than one-third of the land; that notices were given according to the provisions of the statute and for the requisite length of time. It also shows the appointment of a jury, their oath of office, and the return of their assessment roll and its confirmation by the court. This transcript was admitted by the trial court for the purpose of showing that the bridge was within the drainage district; but it also shows all the steps taken for the organization of the district. The court, upon the trial of the case, gave instructions for the plaintiffs, holding that if they removed the bridge and excavated the ditch across the public road as commissioners of said drainage district, they were just as responsible, in law, for their acts, as though they had been acting individually. The jury returned a verdict of guilty and assessed the damages at $700, upon which verdict, after overruling a motion for

a new trial, the court rendered judgment. This writ of error was sued out by the defendants below to bring the record before this court for review.

WORTHINGTON & REEVE, for plaintiffs in error.

CHARLES A. BARNES, and A. A. LEEPER, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The only errors alleged necessary to be considered are those assigned on the rulings of the court below in sustaining the demurrer of the plaintiffs below to the defendants' special pleas, and in giving to the jury certain instructions on behalf of the plaintiffs and in refusing others asked by the defendants. It is not disputed that plaintiffs in error removed the bridge and widened and deepened the creek where the bridge crossed the same, and thereby rendered said bridge useless as a bridge over said creek; but if they did nothing more in the premises than what they were authorized to do by law as the corporate authorities of the drainage district, they were not liable and the rulings of the court were erroneous.

We have been favored with able briefs and arguments by counsel, which we have carefully considered.

The principal question for us to consider is whether section 55, and especially the third proviso to it, of the Drainage and Levee act, approved and in force May 29, 1879, as amended in 1885, is constitutional or not. Said amended section 55 provides, in effect, that when any ditch, drain or levee will benefit any public or corporate road or railroad, the commissioners shall apportion to the county, State or free turnpike road, to the township if a township road, to a company if a corporate road or railroad, "such portions of the cost and expenses thereof as to private individuals," and in case such apportionment is resisted the matter shall be submitted to the jury. The first proviso to the section authorizes the drain-

age commissioners and "the corporate authorities of the county, State or free turnpike, township road, corporate road, or railroad, or any of them," to stipulate as to the amount of such benefits.  The second proviso is, "that the amount so assessed against any railroad company or private corporation shall" become a lien, and provides for the collection and for the payment of assessments against public corporations.  The third proviso to the section is as follows:  "*And, provided, further,* that the sum assessed against either of said corporations shall not include the expense of constructing, erecting or repairing any bridge, embankment or grade, culvert or other work of the roads of such corporations, crossing any ditch or drain constructed on the line of any natural depression, channel or water-course; but the corporate authorities of such road or railroad are hereby required, at their own expense, to construct such bridge, culvert, or other work, or to re-place any bridge or culvert temporarily removed by the commissioners in doing the work of such district.  Full power and authority are hereby given the drainage commissioners to remove such bridges or culverts for the purposes aforesaid, if they, in their judgment, find it necessary."  (Hurd's Stat. 1899, p. 682.)

The first contention made by defendants in error is, that the third proviso does not include public highways or public corporations having control of public roads, because, as it is said, the second proviso relates only to railroad corporations and to private corporations, and that the third proviso, immediately following it, by its terms referring, as it does, to "either of said corporations," limits its application to the corporations mentioned in the second proviso.  We cannot agree to such a construction of the statute.  Public corporations are specifically referred to in the principal part of the section and in the first proviso, and townships in the second, and they are separately mentioned in the second proviso because the effect of the judgment and manner of collection

against the different kinds of corporations are not the same. A lien and execution are provided for to enforce collection of judgments against railroad companies and the owners of private roads, but other methods are necessary to enforce payment against municipal or *quasi* municipal corporations. The grammatical construction would have been better if instead of "either" of said corporations the term "any one" had been used, but the legal construction of the statute cannot be controlled by such considerations when its true meaning otherwise appears from the context. We are of the opinion that the third proviso relates to all the different kinds of corporations mentioned in the section.

We need not inquire, and do not therefore decide, whether the legislature has the power to require private corporations to construct or re-place, at their own expense, bridges belonging to them, temporarily removed by drainage commissioners in prosecuting the work of enlarging a natural stream or water-course for drainage purposes, for the question involved in this case relates only to the power of the legislature to authorize the corporate authorities of drainage districts to remove bridges over streams crossing public highways, when necessary for drainage purposes, without paying to the public road authorities damages for such removal.

By the amendment adopted in 1878, and incorporated in the constitution as section 31 of article 4, it is provided: "The General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby." Under this amendment to the constitution the

statute in question was enacted. Its constitutionality
as a whole is not denied, nor, as we understand counsel,
is it denied that the legislature has the power to include
public highways in drainage districts, and to authorize
the commissioners of such districts to cut ditches and to
enlarge water-courses across such highways when nec-
essary for drainage purposes, and to apportion to the
road authorities, according to benefits, their due propor-
tion of the cost and expense of the drainage work, but
the position taken by counsel for defendants in error, and
which was sustained by the circuit court, is, in effect,
that the drainage authorities must pay all damages to
the public road authorities caused by the removal of the
bridge, made necessary in order to widen and deepen
the channel of the creek across the highway, and that so
much of said proviso as purports to authorize such com-
missioners to remove any such bridge without payment of
damages or requiring its re-placement violates the con-
stitution, and that the commissioners, having proceeded
without lawful authority, are personally liable in tres-
pass for such damages. It is not contended that the
drainage district was not duly organized, nor that the
commissioners were not duly appointed as such. Some
contention is made, however, that the bridge was not in
the district; but we think the evidence was sufficient to
authorize a finding that it was situated in the district.

The proviso in question is similar to, but not identical
with, section 40½ of the act of June 27, 1885, providing
for drainage for agricultural and sanitary purposes, one
difference being that said section 40½ authorizes the drain-
age commissioners to build all necessary bridges along
or across any public highway which may be deemed nec-
essary for the use or protection of the work, the cost to
be paid out of the road and bridge tax. (Hurd's Stat. 1899,
p. 697.) Said section 55 does not authorize drainage com-
missioners proceeding under the drainage and levee act,
to construct or re-place bridges across ditches or streams

and to collect the cost from the public road authorities, but leaves such work to be done by the road authorities themselves.

It is claimed that said proviso is in conflict with section 13 of article 2 of the constitution, which provides: "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." We are unable to see that this constitutional provision relates in any way to the question in controversy. The bridge in question in this case was not private property, but belonged to the public. In no legal sense can it be said that roads and bridges in counties are private property. Counties are but political subdivisions of the State, and are subject to the full control of the State acting through the legislature by general law, and the property they hold is not private but is public property. In *Harris* v. *Board of Supervisors*, 105 Ill. 445, this court said (p. 451): "Counties are mere political divisions of the territory of the State, as a convenient mode of exercising the political, executive and judicial powers of the State. They were created to perform public, and not private, functions. They are wholly public in their character, and are a portion of the State organization. All their powers are conferred, and duties imposed, by the constitution and statutes of the State. They are public, and all the property they hold is for public use. It belongs to the public, and the county is but the agent invested with the title, to be held for the public. * * * The property held by the county was only acquired and held by authority conferred by the legislature, and for public use, and the property being held for the public is under the uncontrolled power of the General Assembly, as it is not inhibited in its absolute control. The county could neither hold nor dispose of property unless authorized by the constitution or statute, and the legislature has the power

to sell or dispose of it without the consent of the county authorities." See, also, *People* v. *Power*, 25 Ill. 169, *Wetherell* v. *Devine*, 116 id. 631, and *Marion County* v. *Lear*, 108 id. 343. In the latter case this court said (p. 349): "A county is a public corporation, which exists only for public purposes connected with the administration of the State government, and it and its revenues are alike, where no express constitutional restriction is found to the contrary, subject to legislative control."

Such being the law, it is clear that the constitutional provision invoked has no application to this case, and that the legislature has full power to authorize another public corporation to remove a public bridge over a stream which runs across a public highway without compensation, although such bridge may have been constructed by the county. Defendants in error, Morgan and Cass counties, are without township organization, and they claimed to own and have control of the bridge which the drainage commissioners removed. Had the bridge been destroyed by fire or had no bridge been built there, and the drainage commissioners had then widened the channel of the creek, it could not be contended that it would be their duty to construct a bridge. The rule would be the same if they removed the bridge by authority of law. In the case at bar the commissioners of the drainage district had the lawful power to widen and deepen the stream for drainage purposes, and it appears that they could not do this without removing the bridge. In other words, the removal of the bridge was necessary for the proper performance of the work for which they were appointed and for which the drainage district was organized, and it is difficult to see how the statutory provision authorizing them to remove the bridge, which was public property subject to the control and disposition of the legislature, could be in conflict with this provision of the constitution. As we have seen, the legislature has the power to provide by law for the construction,

control and disposition of public bridges or other public structures, and we see no reason why the law-making power may not subject public property to more than one kind of public use, and if it becomes necessary for a public purpose to widen a stream, so that it becomes necessary to build a new and greater bridge to enable the public to pass over on the public highway, the constitution is not violated by requiring the public road authorities to construct it.

It is, however, contended that the proviso undertakes to authorize the destruction or damaging of the property of these counties for the mere private benefit of the individual land owners who were seeking, by the agency of the drainage district, to re-claim their lands. We can not hold that the drainage of lands for agricultural and sanitary purposes by means of organized corporate districts is for private purposes only. Since the amendment to the constitution adopted in 1878 we have held that corporations formed for drainage purposes are public corporations. In *Elmore* v. *Drainage Comrs.* 135 Ill. 269, it was said (p. 275): "It will be noted that both the amendment and the act require that the objects to be effectuated by the drainage districts, contemplated by them, were to be accomplished with funds raised 'by special assessment upon the property benefited thereby.' The power to make special assessments is referable to and included within the taxing power. * * * And one of the requisites of lawful taxation is, that the purpose for which contributions are demanded shall be public in their nature. * * * It is insisted that * * * the formation of the district was the voluntary, affirmative act of the land owners, and that its organization was for their benefit, and that, therefore, the corporation is, in its character and aims, essentially a private corporation, and in no sense a corporation *in invitum.* * * * As matter of course, the organization is, in part, for the benefit of the land owners in the district, for the special assessments

which may be made are limited to the property actually benefited, and further limited to the extent of such benefits; but, as we have already seen, there is also a public benefit, and it is only by virtue of the drainage being a matter of public importance that the involuntary land owner can be taxed for the improvement. The conclusion must be, that a drainage district formed under the statute in force July 1, 1879, is not a private corporation, but is a public corporation." See, also, *Board of Supervisors* v. *People ex rel.* 110 Ill. 511.

But counsel insist, also, that this proviso violates sections 9 and 10 of article 9 of the constitution. So much of section 9 as might be supposed to affect the question provides that all municipal corporations may be vested with authority to assess and collect taxes for corporate purposes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same. Section 10 is as follows: "The General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform in respect to persons and property, within the jurisdiction of the body imposing the same. Private property shall not be liable to be taken or sold for the payment of the corporate debts of a municipal corporation."

Assuming that counties are included in "municipal corporations" mentioned in these sections, still so much of this proviso as authorizes the drainage commissioners to remove a public bridge in cases like the one we are considering, without requiring them to re-place the bridge or to build a new one, is not in conflict with said sections 9 and 10 of the constitution. These drainage commissioners did not, in removing the bridge, levy any tax on the county or upon its inhabitants. Nor did they thereby

create any debt against the county, but merely removed
a public bridge from a public highway by authority of
a public law; and even if the legislature did not have the
power to compel the county to build another, it would
not follow that it had no power to authorize the removal
of the old bridge by a public corporation engaged in a
work of a public character.   We are of the opinion that
no provision of the constitution deprives the General
Assembly of the power to determine which of these pub-
lic corporations should pay for the construction of a new
bridge.   Public highways, and bridges on them, do not
belong to the counties or towns which construct them,
but are held by them in trust for the entire public.
(Elliott on Roads and Streets, 34.)   Public corporations,
like counties and towns, being subdivisions of the State
for governmental purposes, are really a part of the State
government, and their authorities are charged with cer-
tain duties, which may be changed, enlarged or dimin-
ished by the General Assembly by general law, subject,
of course, to any restriction imposed by the constitution.
The legislature has all the power of the people not de-
nied to it by the State or Federal constitution, and a stat-
ute cannot be declared invalid because it may appear
merely to be unjust or inexpedient.

We cannot agree to the proposition that to deny the
right of action in this case would be to allow a corporate
body not the corporate authorities of the counties in
question to impose taxes on them without their consent,
or to authorize the General Assembly to impose taxes on
these counties and their inhabitants for corporate pur-
poses, in violation of said sections 9 and 10 of the con-
stitution.   In *Board of Supervisors* v. *People ex rel.* 110 Ill.
511, we held that the raising of money by taxation in
towns and counties under a general law, for building
bridges and maintaining highways, and purposes of a
similar character in which the people of the State at
large are interested, is not, within the meaning of the

constitution, the levying of a tax for strictly a local corporate purpose; that a town, in levying taxes for such a purpose, is in a large sense an agency of the State in carrying into effect general laws which have been enacted for the common good; that such towns are a part of the general machinery of the State and county governments. The public highways are of general concern to the people of the whole State, (Cooley on Taxation, 478,) and in the case cited it was decided that the provisions of the constitution quoted were not violated by the statute requiring counties to pay one-half the cost of building a bridge, where the town had provided for the other half and had brought itself within the provisions of the statute, and *mandamus* was awarded against the board of supervisors of the county in favor of the People, on the relation of the commissioners of highways of the town, commanding said board to levy the tax. It was further said in that case that the commissioners of highways in such a case do not levy the tax on the tax-payers of the county, but only perform the duties required of them by the statute on behalf of the county as well as the town. See, also, *Wetherell* v. *Devine*, 116 Ill. 631, and *Wilson* v. *Board of Trustees*, 133 id. 443.

Counsel make the further point that the drainage amendment to the constitution expressly provides that the cost of the drainage work shall be paid for by special taxation upon the property benefited thereby, and that it is a necessary implication that a county or a town cannot be compelled to levy a general tax to pay for the building of a bridge on a public highway, rendered necessary by the work of the drainage commissioners. We do not understand that by effect of this statute any part of the cost of the drainage work is imposed on the county, nor is any part of its revenues disposed of for the benefit of the drainage district. The cost of removing the bridge was a part of the cost of the drainage work, and that was paid by such district out of its fund

derived from special assessment on the lands benefited. But it does not appear that the building of a new bridge was of any special benefit in draining the lands of the district. It was of general benefit to the public, and the cost of it might well be required to be paid out of the public revenues of the county. The General Assembly, representing the public, has so provided, and we have no doubt it had the necessary power. The suit was not brought to recover the value of the bridge removed and thereby rendered useless, but for the cost of building a new and larger one. But if it had been, it was, as before said, public property and subject to control and disposition of the law-making power, and the loss was *damnum absque injuria.*

Inasmuch as the rulings of the trial court in sustaining the demurrer to the special pleas and in instructing the jury were contrary to our views of the law, the judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Cartwright, Boggs and Hand, JJ., dissenting.