Bunting v. Oak Creek Drainage District.

---

ANNA M. BUNTING, APPELLEE, v. OAK CREEK DRAINAGE DISTRICT, APPELLANT.

FILED MAY 13, 1916.    No. 18874.

1. **Corporations:** LIABILITY FOR NEGLIGENCE. Local corporations created by request or consent of the persons residing in the territory incorporated and principally for their benefit, although they are clothed with powers of a public nature, are liable for damages caused by their negligence.

2. **Drainage Districts:** LIABILITY FOR NEGLIGENCE. A drainage district organized and acting under article V, ch. 19, Rev. St. 1913, is liable for damages caused by its negligence in the construction of its works.

3. **Eminent Domain.** Condemnation by right of eminent domain is not allowed except so far as it is necessary for the proper construction and use of the improvement for which it is taken.

4. ———: DAMAGES. If the application for condemnation specifies the desired taking and use of certain real estate and shows that it is necessary for the improvement contemplated, all damages caused by such taking properly exercised will be included in the damages allowed in such proceedings, which will be a bar to any further claims for such damage.

5. ———: ·DAMAGES FROM NEGLIGENT CONSTRUCTION. In such case damages caused by the negligent construction of the improvement are not contemplated in the condemnation proceedings and are not barred thereby.

6. ———: ———: ACCRUAL OF RIGHT OF ACTION. Damages caused unnecessarily by negligence and improper construction of the improvement cannot be anticipated, and a right of action accrues therefor when the damage occurs.

7. Appeal: PLEADING: IRRELEVANT MATTER. If a petition states one cause of action for damages to real estate, and also contains allegations as to other damages to the same real estate of a similar nature which are not sufficient of themselves to justify a recovery thereon, overruling a motion to require the plaintiff to separately state and number his causes of action will not be sufficient ground of reversal, when no motion is made to strike out such allegations, and evidence of both injuries to the real estate is received without objection on that ground. A plaintiff cannot be compelled to state a cause of action which he has failed to plead.

8. ———: INSTRUCTION AS TO MEASURE OF DAMAGES: HARMLESS ERROR. An instruction upon the measure of damages which follows and properly reflects the evidence admitted without objection will not be held so prejudicially erroneous as to require a reversal.

9. ———: MISCONDUCT OF JURY: FAILURE TO OBJECT. Alleged misconduct of the jury must be called to the attention of the trial court at the earliest opportunity. A party who sees the matters supposed to be misconduct and makes no complaint until after the verdict is not entitled to a reversal because of such supposed misconduct. He cannot so speculate upon his chance of a favorable verdict.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*T. F. A. Williams,* for appellant.

*B. F. Good, A. M. Bunting* and *A. W. Richardson,* contra.

*W. J. Courtright, amicus curiæ.*

SEDGWICK, J.

The defendant drainage district constructed a channel across a part of the lands of the plaintiff to carry the water of Oak creek in a more direct line. The plaintiff began this action in the district court for Lancaster county to recover damages to her land caused, as she alleged, by the negligence of the defendant in the construction of the channel and in the construction of a bridge over the channel. The trial in the district court resulted in a verdict and judgment in favor of the plaintiff, and the defendant has appealed.

The first important, and perhaps controlling, contention of the defendant is that a drainage district is a public corporation, and is not liable to an action for negligence. Chapter 19, Rev. St. 1913, is devoted to drains and drainage. It contains seven different articles: "I. Drainage by county authorities. II. Drainage by incorporated companies. III. Drainage for agriculture or sanitary purposes by individual landowners. IV. Drainage districts organized by proceedings in district court. V. Drainage districts organized by vote of landowners. VI. Natural lakes. VII. Sanitary drainage districts in cities." The pleadings in this case do not plainly show under which of these several articles this district is organized. The case apparently was tried by all parties on the theory that it was immaterial under which one of the several classes of drainage districts the defendant belonged. At the close of the trial the jury were excused, and the defendant offered evidence tending to show that the defendant district was organized under the act of 1907, Laws 1907, ch. 153, as amended. This evidence was objected to by the plaintiff on the ground that it was immaterial, "waiving, however, the production of the county clerk to prove the original incorporation," but as the evidence is, we think, material and no other ground of objection was made, it may be considered that the defendant was organized under that act, which is article V, ch. 19, Rev. St. 1913—"Drainage dis-

tricts organized by vote of landowners." In 2 Farnham, Waters and Water Rights, sec. 256, it is said: "The same principle which applies to a county applies to a drainage district. Unless the statute gives a right of action against it, no suit can be brought against it." And this statement and similar statements of other authors are relied upon by the defendant as establishing the doctrine that under no circumstance can a drainage district be liable for negligence. In the same section of his work the author quoted from plainly shows that the question of liability for negligence depends upon the statute under which it is organized; that is, upon the nature and character of the organization. He says: "So, whenever it is seen that the municipality has committed a wrongful act in turning water or sewage onto abutting property, there is no hesitation in holding that it is liable for the injury. Municipal corporations are by statute generally made liable for their acts of negligence the same as private individuals. When the question arises, however, as to the liability of a county or drainage district, a different principle applies. * * * Therefore, in determining whether or not they are liable for their negligent acts, attention must be given to the provisions of the statute." The author devotes something over 300 pages to the discussion of drainage, and his discussion shows that in the statement quoted he is considering drainage districts formed as counties are, by legislative enactment for governmental purposes. The state is a sovereign and cannot be sued without its consent. Being a sovereign, it is presumed that it will do justice to its citizens without compulsion, and even the sovereign itself under our constitution cannot take or damage private property without compensation. It has frequently been decided in this court that counties in performing the duties that are imposed upon them by the law are not ordinarily liable for the negligence of their officers, unless the statute under which they are acting so provides. It is not necessary in this case to consider under what circumstances a county might be

liable when proceeding under article I, ch. 19, Rev. St. 1913.

One of the earlier cases holding that a county is not liable for damages caused by the negligence of its officers is *Wood v. Colfax County*, 10 Neb. 552, in which it was held: "A county is not liable in damages at common law, or under the Revised Statutes of 1866, for injuries caused by the breaking down of a public bridge, which was caused by the negligence of the county commissioners." In the opinion by Chief Justice Maxwell it was said: "If the negligence complained of in the petition and consequent injury to the plaintiff had been occasioned by a natural person or a municipal corporation proper, the right to recover would be unquestioned. But are counties municipal corporations? Municipal corporations may be defined to be bodies politic and corporate, created by law for the purpose, primarily, of regulating and administering the local and internal affairs of towns, cities and villages. 1 Dillon, Municipal Corporations (3d ed.) sec. 9. Such corporations are created principally for the benefit and convenience of the inhabitants composing the corporation, although they are important auxiliaries of the state in the administration of the law. The charters conferring powers, prescribing duties, and imposing burdens must in some way receive the assent of those to be governed by their provisions, and they thus accept the benefits and agree to perform the duties imposed upon them. * * * A county is a mere local subdivision of the state, created by it without the request or consent of the people residing therein."

Drainage districts organized by vote of landowners under article V are voluntary corporations principally for the benefit of the owners of the land lying in the district incorporated. In determining whether such districts shall be organized, any person may cast one vote "for each acre of land or fraction thereof and each platted lot which he may own or have easement in." Rev. St. 1913, sec. 1872. A majority of the votes is necessary for the formation of the district. The defendant cites *Heffner v. Cass and Mor-*

*gan Counties,* 193 Ill. 439, as holding that a drainage district is not liable for the negligence of its officers. In a more recent case, *Bradbury v. Vandalia 'Levee and Drainage District,* 236 Ill. 36, 47, 19 L. R. A. n. s. 991, that court referred to a still earlier case as holding that such districts "were to be regarded as mere public involuntary quasi-corporations, and therefore not liable to respond in damages to an individual injured by the negligent or wrongful act of their officers, agents, or servants." The court then referred to the *Heffner* case as holding the same doctrine, and said: "It is quite evident that it needs some revision or limitation. The ground of distinction between corporations which are liable for the negligent or wrongful act of their agents or servants and those which are not is that public involuntary quasi-corporations are mere political or civil divisions of the state created by general laws to aid in the general administration of the government and are not so liable, while those which are liable have privileges conferred upon them at their request, which are a consideration for the duties imposed upon them. *Kinnare v. Chicago,* 171 Ill. 332. Neither the state, nor any part of it, is divided by the legislature into drainage districts, nor do they have public duties thrust upon them without their consent. The organization of a drainage district is for the sole and exclusive benefit of the territory within the district (*Commissioners of Union Drainage District v. Highway Commissioners,* 220 Ill. 176), and the lands within the district are assessed to pay the whole cost on the theory that they alone are benefited. * * * The organization is not different, in principle, from the organization of cities, villages or towns under a general law, on a petition of a certain proportion of the legal voters within the territory. It is correct to say that a drainage district is a quasi-corporation if the act under which it is organized does not make it a corporation in fact; but it is not created for political purposes or for the administration of civil government."

The district chooses its own board of directors and its work is done under its direction and supervision. It is given certain additional powers and privileges because the formation of the district "will be for the public health, convenience and welfare." It is given the power of eminent domain as are railroads and ordinary municipal corporations. In the conduct of their affairs they must not negligently injure others. If they do, they are liable for such injuries as cities and villages are.

A brief has been filed by a "friend of the court" in which it is vigorously insisted that such damages as are here alleged could be recovered only in the original condemnation proceedings in which the drainage district obtained the right of way. The brief says: "This was not a question of negligence in construction, but a question of deliberate plan. The district therefore actually took for drainage purposes the right of way involved in the ditch and actually took the lake for the purpose of constituting a channel of the new creek and for the purpose of furnishing a spillway temporarily until the outlet drained the water away. This was a part of the plans." The position would be more intelligible if it was not also contended that a drainage district is not liable for negligence. We do not see why the same rule that is applied to other corporations which exercise the right of eminent domain is not applicable here. Condemnation is not allowed, except so far as it is necessary for the proper construction and use of the work. If the drainage district had attempted to condemn this lake as a "spillway," and had definitely disclosed that purpose, and the proposed manner of constructing and using the same, and, upon objection by the parties affected, had made it appear to be a necessary and proper construction of the improvement, the district would be charged in the condemnation proceedings with all damages caused by the proper construction of the work. Negligence would not be presumed and anticipated. Persons injured by a necessary and proper construction of the work must be paid their

99 Neb.—54

damages before the work is done. Damages caused unnecessarily by negligence and improper construction of the improvement cannot be anticipated, and a right of action accrues therefor when the damage occurs.

It is alleged that the defendant "constructed a dam in the regular channel, and a ditch or artificial channel across said bend, designed to divert the flow of water from its natural channel in Oak creek into the artificial channel, as aforesaid. * * * That in the construction of said artificial channel the defendant was guilty of negligence in this, to wit, in excavating a channel only ten (10) feet in width at the bottom instead of twenty (20) feet in width, and which channel was insufficient in width and depth to retain and imprison in its banks the flood waters that ordinarily occur and which theretofore flowed in the natural channel of Oak creek. * * * The defendant drainage district was also guilty of negligence in constructing a pile bridge across the said artificial channel of Oak creek where it crosses the public road about 300 feet southeast of the lake bed, through which said channel runs. That, instead of constructing a single-span bridge with stone abutments on each side of said channel, the said district constructed a three-span bridge, with piles driven thereunder for support of said spans in such manner and so closely together that the said piling so obstructed the channel that trees and other debris which flowed in said channel during the flood of May, 1913, formed a barrier across the channel, thereby raising the height of water in the channel, backing it up to the opening in the dike at the lake bed, causing it to spread out upon plaintiff's land, and thereby augmenting and increasing the flooding thereof in the month of May, 1913, as aforesaid."

There is no attempt on the part of defendant to justify these acts as necessary in the proper construction of the work. The petition contains unnecessary, and perhaps improper, allegations; but, considering the manner of trying the case by both parties, the defendant is not in a position

to insist that damages alleged in the petition must be regarded as compensated in the condemnation proceeding.

. · The defendant filed a motion to require the plaintiff to separately state and number her causes of action, and to strike out certain allegations of the petition. The court sustained the motion to strike out parts of the petition, but overruled the motion to require plaintiff to separately state and number her causes of action. The defendant complains of this refusal of the court. The petition alleges somewhat in detail damages alleged to have been caused in the months of March and April, 1912, and then alleges "that, in consequence of the negligence of the defendant, as aforesaid, the plaintiff's land to the extent of twenty-five (25) acres was subjected to a second overflow in the month of May, 1912, and a third overflow in May, 1913, and a fourth flood in March, 1914, and there was deposited thereon a large additional amount of debris, together with a large quantity of water, which remained thereon for several days in consequence of defendant's negligence in permitting such flood waters to escape from such artificial channel." This latter allegation hardly amounts to an allegation of a separate cause of action. It alleges no damages. · It would no doubt have been stricken out as irrelevant if motion had been made for that relief. This is also true of other similar allegations.

"Where by the negligent construction of a railway embankment and ditches, surface water is discharged upon the land of an adjoining proprietor and his crops thereby injured, such party's cause of action accrues at the date of the injury, and not at the date of the construction of the embankment and ditches. * * *. The measure of damages for the destruction of a growing crop is the value thereof in the condition in which it exists at the time of its destruction." *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745. These principles apply equally to injuries to the land itself.

The court limited plaintiff's recovery to damages caused to the land by the several floodings thereof in different

years, and stated that the measure of plaintiff's damages was "the fair market value of plaintiff's land before it was flooded in March, 1912, and the fair market value after it was flooded in March, 1914.".

When the evidence was offered by plaintiff, the witness was asked: "Now, give the fair and reasonable market value of this land before it was flooded in 1912, and after the last flood of March, 1914." The defendant objected "because it does not exclude from the witness' consideration all of the elements that entered into the award made by the jury of condemnation." No objection was made upon the ground now insisted upon. The witness answered the question, showing a difference in value of $9 or $10 an acre, and added: "There is a depreciation, I would say, from $7 to $8 (an acre) in the value of the land." If this depreciation was not caused by the negligence complained of, the defendant might show other cause,.if any. After this evidence was admitted without objection, both parties considering at the time that this was the proper method of proving the injury to the land, and defendant objecting only upon the ground that the witness was not duly considering the award upon condemnation, the defendant ought not now to have a reversal because the question of damages was submitted to the jury as it was proved. There was no other basis in the evidence upon which the measure of damages could be submitted. The defendant ought not to defeat the case by such methods.

Complaint is made of the conduct of the jury in viewing the premises under the order of the court. The defendant's attorney accompanied the jury, and knew at the time of the matter of which he is now complaining, but made no objection until after the verdict. There is no evidence that the verdict was affected by the irregularity complained of, and for these reasons this objection must be overruled.

The judgment of the district court is

AFFIRMED.