## ARTHUR D. COMPTON, APPELLANT, V. ELKHORN VALLEY DRAINAGE DISTRICT, APPELLEE.

FILED JULY 9, 1930. No. 27420.

*Mullen & Morrissey* and *Rose, Wells, Martin & Lane,* for appellant.

*Courtright, Sidner, Lee & Gunderson* and *George DeLacy, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

PER CURIAM.

This is an action against a drainage district for damages to crops on lands within the district. Plaintiff appeals from the judgment on a verdict directed by the court against him at the conclusion of the plaintiff's evidence.

The defendant, Elkhorn Valley Drainage District, was organized in 1909 under the act of 1907. Laws 1907, ch. 153 (Comp. St. 1922, secs. 1813-1862; Comp. St. 1929, secs. 31-501 *et seq.*). The district comprises about 55,000 acres in Douglas and Sarpy counties, the majority being in the

former county. Plaintiff's land, on which he alleges the damages arose, is the east three-fourths of section 21, township 15, range 10, in Douglas county. It lies in a section of land between the Platte and Elkhorn rivers, though not adjacent to either river. About 1879 the county made a road ditch on the east side of this section and another on the west side thereof. After the drainage district was organized in 1909, it asked the county board for right of way to enlarge the road ditches on the east and west sides of this section so as to make them a part of the drainage system. The county commissioners refused. The district thereupon proceeded to obtain the right through condemnation proceedings in the county court, after which in due time it enlarged and deepened these ditches, increasing their capacity by a considerable multiple. For some years they served the plan to carry other water of the system past plaintiff's land as well as to aid in draining his land. Gradually they filled up with silt and other matter so that, according to the pleadings and evidence offered tending to prove his allegations, in 1923, 1924 and 1925 the crops on his lands were damaged by reason of the failure of the defendant to maintain these ditches by cleaning them out so that they might continue to perform their originally intended functions.

There was evidence to the effect that the ditch on the west side of the section in question was so constructed and connected with a portion of the district northwest of this land as to carry the water from approximately a square mile of watershed that formerly drained into the Elkhorn river without coming to the plaintiff's land; and that the ditch on the east side of plaintiff's land was so constructed and connected with a portion of the district farther north consisting of approximately 160 acres that also formerly drained into the river without coming to plaintiff's land. There was evidence also that when the east ditch was constructed there was a road bridge at the intersection at the northeast corner of section 21, under which the water coming to that point passed from the west toward the Elkhorn river. The district removed that bridge and filled up the

road so that what water theretofore went east from that point thereafter went down the enlarged ditch along the east side of plaintiff's land. It was purposed and effected thereafter to carry all of the water reaching this northeast corner of the land from the west down the road ditch on the east side of and past plaintiff's land along with the water that came from the north.

While some auxiliary propositions are discussed by the parties in their briefs, they agree in substance that the decisive question involved here is whether the drainage district is under a legal obligation to maintain its works by cleaning out the ditches. This, also, was the understanding of the experienced trial judge, whose discussion of the matter, when he decided the proposition in the negative and instructed the jury to return a verdict for the defendant, appears in the record.

In *Bunting v. Oak Creek Drainage District,* 99 Neb. 843, the district was also formed under the act of 1907 as amended. We affirmed a judgment for damages to plaintiff's land, holding the district liable for damages caused by its negligence in the construction of its works. In that case, also, it was held that damages caused unnecessarily by negligence and improper construction cannot be anticipated and a right of action accrues therefor when the damage occurs.

In *Hopper v. Elkhorn Valley Drainage District,* 108 Neb. 550 (same defendant as here) we affirmed a judgment for damages to crops. The second point in the syllabus says: "A drainage district corporation organized under the laws of this state, although a local corporation clothed with powers of a public nature, is liable for damages caused by its negligence in the construction or maintenance of its works." It seems, however, in that case the damage was caused by the original faulty construction of the ditch and failure to have made a dyke; that the ditch had an angle so abrupt that it would not permit the water to flow through it properly but caused refuse and debris to collect and hold the water back; and that where it emptied into the river a floodgate was so constructed that in high water the river flowed back through the ditch and damaged Hopper's land.

So the question of maintenance was not there involved strictly in the sense it is here understood.

In *Miller v. Drainage District*, 112 Neb. 206 (while we note that it arose under chapter 161, Laws 1905, or under that act as amended), we affirmed a judgment for damages to crops by flooding. The opinion holds that the district is liable "for damages caused by its negligence in the construction or maintenance of its works." Here, too, the fault would seem to have been in the original construction of the ditch rather than in its maintenance, for, in stating the nature of the case, the opinion says: "The improvement was constructed partly by digging a new ditch and partly by using the natural channel of what is known as Muddy creek. The negligence alleged is that the defendant district failed to widen and clear the natural channel of Muddy creek so used as a part of the improvement; and that it was negligent in constructing the new ditch narrower and shallower at some points than others; and that the district negligently allowed drifts and debris to accumulate and remain in the old channel of Muddy creek, thus retarding the escape of the flood waters and causing them to run over and upon plaintiff's lands doing damage to the crops thereon."

*Flader v. Central Realty & Investment Co.*, 114 Neb. 161, was an injunction suit to prevent the construction of a dam across Oak creek. Oak Creek Drainage District and others intervened. The purpose of the dam was to divert the water of the creek into a lake owned or controlled by the original defendants. The district court denied the injunction. This court reversed the judgment. While the body of the opinion, in reciting some of the features of the act of 1907, stated among other things that the law imposes upon the drainage district "the duty of keeping the ditches in repair," this idea was not reflected in the syllabus. It was not necessary to a decision of the case and it was used by the court in argument rather than as a vital proposition of law in an action for damages for negligence between a party damaged and the drainage corporation organized under the law.

Thus, the cases to which we have referred do not seem to have passed with authority upon the question of the duty of defendant, under the statute and the law, to keep its ditches cleaned out; nor do we find anything in the statute itself which imposes upon such a district the positive duty of cleaning out ditches properly constructed and established; nor was there anything in its petition to the county board at the time the district was organized or in the proposition submitted to those having land within the proposed district that specifically bound the district when organized to maintain its ditches by cleaning them out after they were once properly constructed. Section 1 of the act (Comp. St. 1922, sec. 1813) authorized that "a drainage district may be formed and may proceed as hereinafter provided, for the purpose of inaugurating, constructing, controlling and maintaining said work or works of public improvement," but it did not, as heretofore stated, specifically provide that such a corporation must maintain its works. Section 20 of the act (Comp. St. 1922, sec. 1838) gave the board of directors authority to employ an engineer to "proceed according to their best judgment to carry out such work of the character mentioned in paragraph one hereof, as they deem for the public health, convenience and welfare." Section 1848, Comp. St. 1922, being an amendment of section 30 of the original act, provides that, there being no debts outstanding, the corporation may be dissolved by a three-fifths vote of the members. It seems that it was in the contemplation of the legislature that the district through its officers should be granted the responsibility of constructing the works for drainage of the lands of the district and were given the discretion to adopt and carry out proper plans to effect that purpose, without ordinarily being required to preserve the ditches in perpetuity after once constructed so as to effect their object.

But there is a further phase of the action that was lost sight of by the drainage district when it neglected to clean out these ditches and which we think was not given its proper influence by the district court. Section 21, art. I of the Constitution, provides: "The property of no person

shall be taken or damaged for public use without just compensation therefor." The words "or damaged" were inserted in the sentence in 1875. When the defendant collected the water from the other two watersheds that were not wont to pass near plaintiff's land and conducted them in volumes through its ditches adjoining plaintiff's land and when it closed up the ditch at the intersection at the northeast corner of his land so that water escaping there was forced to come down the ditch east of his land, did not the defendant assume the duty of so caring for such foreign surface waters that they would not damage plaintiff's property? Was it not a continuing duty? If the ditches provided by the defendant failed to care for the additional burden of these foreign waters, then did the cause of damage relate back to the original construction of the ditches upon which the defendant chose to cast the burden? Did the legislature intend or could it give such a district a vested right to collect these waters and cast them upon plaintiff's land merely by reason of the fact that it had condemned a right of way along the public roads for the course of the particular ditches?

It has long been a uniform rule in this state that one may not lawfully collect and by means of a ditch discharge surface water upon the land of his neighbor to his neighbor's damage. *Davis v. Londgreen,* 8 Neb. 43; *Fremont, E. & M. V. R. Co. v. Marley,* 25 Neb. 138; *Bunderson v. Burlington & M. R. R. Co.,* 43 Neb. 545; *Jacobson v. Van Boening,* 48 Neb. 80; *O'Kieffe v. Chicago, B. & Q. R. Co.,* 96 Neb. 518; *Keifer v. Shambaugh,* 99 Neb. 709. Sometimes injunction has been allowed as the remedy to prevent the act, where injunction would be effective, and sometimes actions for damages have been the remedy after the damages occurred and were capable of being ascertained. The right of action accrues when the damage occurs and the statute of limitations does not begin to run until then. *Omaha & R. V. R. Co. v. Standen,* 22 Neb. 343. Behind the rule is the provision of the Constitution that one's property may not be damaged without compensation.

The main purpose of the drainage company in condemn-

ing the right of way for the road ditches on the east and west sides of section 21 was that it might enlarge them so that they would carry the drainage waters on their way. The district now contends, as we understand it, that the condemnation took into consideration all damages that plaintiff might suffer, and that therefore he is without remedy. A situation analogous in principle arose in a surface water collection and diversion and is reflected in *Iske v. Missouri P. R. Co.*, 94 Neb. 9, 13, where this court decided the matter adversely to this contention and cited several cases as authority for the ruling. It can readily be understood why, if the only purpose of these ditches was to care for drainage of the lands of plaintiff and others in his watershed, the district might in its discretion neglect or delay to clean them out under the letter and spirit of the drainage act. But when they bring waters into these ditches from a foreign watershed and expressly condemn the right of way in order to carry the added burden, we do not think they are protected by their condemnation proceedings from responding in damages to the extent that this added burden caused such damage. We are of the opinion that this relates back to the original construction and the plans therefor and execution thereof, and so far as necessary to the maintenance to prevent the evil that should have been anticipated in the original construction; with the result that the district is liable for such damages to plaintiff's crops as may be found to be caused by the surface water collected from the other watersheds and brought to his land and left there by the failure to take care of this extra burden.

For the reasons stated, the judgment of the district court is reversed and the cause remanded.

REVERSED.

THOMPSON, J., dissenting.

In my view the majority opinion does not fairly state the issues presented in the cases of *Bunting v. Oak Creek Drainage District*, 99 Neb. 843, *Hopper v. Elkhorn Valley Drainage District*, 108 Neb. 550, *Miller v. Drainage District*, 112 Neb. 206, nor the law applicable to the facts reflected by the

records therein. Further, such majority opinion neither sustains nor overrules our holdings in the above named three cases, to the effect that a drainage district must maintain the system after once constructed, and not be guilty of negligence in the course of such maintenance.

"In construing an act of the legislature, the court will give to it the meaning which it is apparent from the language used that the legislature had in mind when the act was passed." *State v. Hanson,* 80 Neb. 738.

In determining the scope and purpose of an act, as was done in the *Bunting* case, such determination is pertinent to the issues involved, is instructive, and as to the legislative intent is illuminating and conclusive. Further, such determination cannot be classed as dictum, hence it is binding as a legal precedent until reversed.

In the discussion of the trial court on the motion for a directed verdict, which discussion is made a part of the bill of exceptions herein, and is not refuted in the majority opinion, it is submitted that the rule applicable to a county, under our law holding it without liability for the negligence of its officers unless specifically so provided by statute, is applicable to a drainage district and its officers. The status of such a drainage district is, in the *Bunting* case, *held* to be that of a city, town, or village, created under general law, and not that of a county.

As an indication of what is covered by the act of 1907 (Laws 1907, ch. 153; Comp. St. 1922, secs. 1813-1862) referred to in the majority opinion as the one under which the appellee drainage district was organized, and as material to the matters involved herein, attention is called to sections 1813, 1826, and 1838, Comp. St. 1922.

Section 1813 provides: "Whenever it will be conducive to the public health, convenience or welfare, either to drain any wet land; or to drain any land subject to overflow by water; or any land which will be improved by drainage; or to build or construct any dike or levee to prevent overflow by water; or to construct, straighten, widen, deepen or alter any ditch, drain, stream, or water course; or to riprap or otherwise protect the bank of any stream or ditch; or to

construct, enlarge, extend, improve or maintain any system of drainage; or to construct, enlarge, extend, improve or maintain any system of control of surface water or running water; or to do any two or more of said things jointly; then a drainage district may be formed and may proceed as hereinafter provided, for the purpose of inaugurating, constructing, controlling and maintaining said work or works of public improvement." The foregoing quotation is a fair reflection of the title of the original act. Laws 1907, ch. 153.

Section 1826 provides, among other things: "The apportionment, when finally adjusted, shall continue as the basis of all levies of special assessments to pay all expenditures for organization, construction, improvement, enlargement, extension, damages, costs, maintenance, bonds and interest thereon, and all other expenses."

While there have been amendments to certain of the respective sections of such act, these amendments, however, in no manner affect the matters here in question, save that as to section 1838, entitled by the compiler, "Contracts for construction and repair," which was amended in 1921 (Laws 1921, ch. 280) by adding thereto the following: "Provided, however, that nothing in this section shall be construed to prevent the board of directors from hiring one of their members by the day to superintend maintenance work within the district. The board of directors shall likewise, when in their judgment it is for the best interest of the district, be empowered to purchase all necessary machinery and equipment for the purpose of maintaining, cleaning out or reconstructing existing ditches, or for the purpose of constructing new ditches within said district, and for such work may hire by the day, week or month all necessary help."

In defining the scope and purpose of the above referred to act of 1907, we held in the *Bunting* case, *supra*: "A county is a mere local subdivision of the state, created by it without the request or consent of the people residing therein," hence, not liable for the negligence of its officers unless so provided by statute.

Further, as to municipal corporations, we said in the *Bunting* case, quoting from *Woods v. Colfax County*, 10 Neb. 552: "If the negligence complained of in the petition and consequent injury to the plaintiff had been occasioned by a natural person or a municipal corporation proper, the right to recover would be unquestioned. * * * Municipal corporations may be defined to be bodies politic and corporate, created by law for the purpose, primarily, of regulating and administering the local and internal affairs of towns, cities and villages. 1 Dillon, Municipal Corporations (3d ed.) sec 9. Such corporations (municipal) are created principally for the benefit and convenience of the inhabitants composing the corporation, although they are important auxiliaries of the state in the administration of the law. The charters conferring powers, prescribing duties, and imposing burdens must in some way receive the assent of those to be governed by their provisions, and they thus accept the benefits and agree to perform the duties imposed upon them."

As held by us in *Burke v. City of South Omaha*, 79 Neb. 793: "The making, improving and repairing of streets by a municipal corporation relate to its corporate interest only, and it is liable for the wrongful or negligent acts of its agents in performing such duties." The same view is expressed in *Levin v. City of Omaha*, 102 Neb. 328. For a comparison of holdings on this same subject in different states, see 52 A. L. R. 524.

In the *Bunting* case, *supra*, it was further stated: "Drainage districts organized by vote of landowners * * * are voluntary corporations (as are municipal corporations) principally for the benefit of the owners of the land lying in the district incorporated. In determining whether such districts shall be organized, any person (within the district) may cast one vote 'for each acre of land.' * * * A majority of the votes is necessary for the formation of the district. * * * (Then quoting from *Bradbury v. Vandalia District*, 236 Ill. 36) 'The ground of distinction between corporations which are liable for the negligent or wrongful act of their agents or servants and those which are not is that

public involuntary quasi-corporations are mere political or civil divisions of the state created by general laws to aid in the general administration of the government and are not so liable, while those which are liable have privileges conferred upon them at their request, which are a consideration for the duties imposed upon them. * * * Neither the state, nor any part of it, is divided by the legislature into drainage districts, nor do they have public duties thrust upon them without their consent. The organization of a drainage district is for the sole and exclusive benefit of the territory within the district, * * * and the lands within the district are assessed to pay the whole cost on the theory that they alone are benefited. * * * The organization is not different, in principle, from the organization of cities, villages or towns under a general law, on a petition of a certain proportion of the legal voters within the territory.' The district chooses its own board of directors and its work is done under its direction and supervision. It is given certain additional powers and privileges because the formation of the district 'will be for the public health, convenience and welfare.' * * * In the conduct of their affairs they must not negligently injure others. If they do, they are liable for such injuries as cities and villages are."

As comprehensive of the duty thus imposed, we stated in the first syllabus of the *Bunting* case: "Local corporations (such as drainage districts) created by request or consent of the persons residing in the territory incorporated and principally for their benefit, although they are clothed with powers of a public nature, are liable for damages caused by their negligence." Thus, their liability for negligence is general.

If, as thus stated, a drainage district partakes of the nature of a city, town or village, it needs but to be mentioned to be recognized that such drainage districts, operating in their corporate capacity, assume the same responsibilities and liabilities for the negligence of their officers as do cities, towns or villages while operating in their corporate capacity; this, not only for negligence in construction, but for negligence in failing to maintain as well as negligence

in the course of such maintenance. In other words, such drainage districts are liable for any of their negligent acts of commission or omission forming the proximate cause of injury to another.

The statute, as originally enacted, also as it stood at the time the *Bunting* opinion was adopted, provided for maintenance; and after its adoption, was strengthened by the amendment of section 1838 in 1921 (Laws 1921, ch. 280) by which amendment it was provided, as we have seen: "The board of directors shall likewise, when in their judgment it is for the best interest of the district, be empowered to purchase all necessary machinery and equipment for the purpose of *maintaining,* cleaning out or reconstructing existing ditches, or for the purpose of constructing new ditches within said district, and for such work may hire by the day, week or month all necessary help." This section implies a duty to maintain, and simply permits the purchase of machinery, if by the board deemed wise, on their complying with the provisions. Further, such section 1838 saves to the board the authority previously conferred to hire one of its own members to superintend maintenance work within the district.

We have consistently followed the rule announced in the *Bunting* case, and, so doing, have refused to class drainage districts in the same catagory with counties, up to and until this majority opinion, at least indirectly, changes the rule.

While, in the *Bunting* case, the broad rule was announced that a drainage district, such as this, was liable for negligence, as was a city, town or village, the liability of such a district was never succinctly stated as applying to negligence in failing to maintain or negligence in the course of maintenance, until we considered the *Hopper* case, 108 Neb. 550, 563, and it was there stated, in the course of the opinion: "The allegations in plaintiff's petition are that the defendant carelessly and negligently constructed its drainage ditches and thereafter maintained the same so that the plaintiff's lands were flooded and his crops injured or destroyed; that the negligence in the construction and

maintenance of said ditches by defendant company was the proximate cause of the damages set forth in the four causes of action.

"The question to be decided under this assignment of error is whether the provisions in said deeds relieved the defendant from all its responsibility for negligence, provided the ditches were constructed and maintained according to the then present or the future plans of the drainage district.

"The question can be answered by the application of certain established principles of law relating to damages caused by negligence. This court has held in *Bunting v. Oak Creek Drainage District,* 99 Neb. 843, that a drainage district corporation, although a local corporation clothed with powers of a public nature, is liable for damages caused by its negligence in the construction of its works. In the same case this court further held that 'damages caused unnecessarily by negligence and improper construction of the improvement cannot be anticipated, and a right of action accrues therefor when the damage occurs.' When these legal principles are applied to the allegations in plaintiff's petition and to the evidence in support thereof, the question would seem to be answered in the negative. It was the plain legal duty of the drainage district corporation to so construct and maintain its ditches as to not work injury to the lands and crops of plaintiff, and as it did not do so it was liable for the damages."

And in the syllabus we announced the following rules of law:

"A drainage district corporation organized under the laws of this state, although a local corporation clothed with powers of a public nature, is liable for damages caused by its negligence in the construction or maintenance of its works.

"Damages caused unnecessarily by the negligence and improper construction and maintenance of the improvements of a drainage district corporation cannot be anticipated and a right of action accrues therefor when the damages occur.

"A party who sells and conveys to a drainage district

corporation a right of way through his lands, and in such conveyance releases such corporation from all claims for damages by reason of the occupancy and use of the land conveyed, may nevertheless recover damages caused by the carelessness and negligence of the district in the construction and maintenance of its improvements."

Then, in *Miller v. Drainage District,* 112 Neb. 206, 209, dealing with the same subject, but under a different act (Laws 1905, ch. 161, and amendatory acts; Comp. St. 1922, secs. 1744-1812) we said: "The plaintiffs are not seeking damages which arose from natural causes, but from the careless and negligent construction and maintenance of the ditch. It is also contended by defendant that it was not liable for damages for either faulty construction or lack of maintenance. The aforesaid cited case (the *Hopper* case) held: 'A drainage district corporation organized under the laws of this state, although a local corporation clothed with powers of a public nature, is liable for damages caused by its negligence in the construction or maintenance of its works.'" And in the syllabus we held: "A drainage district organized under chapter 161, Laws 1905, as originally enacted, or under the act as amended, is liable for damages caused by its negligence in the construction or maintenance of its works."

While in this *Miller* case we were construing a different act, however, such act, too, was governed by the announcement in the *Bunting* case, as each drainage district being considered in these respective cases was a voluntary association or corporation controlled by the rules governing cities, towns or villages.

However, to avoid the force and effect of the law as announced in the *Hopper* and *Miller* cases, the majority opinion says of the former: "It seems, however, in that case the damage was caused by the original faulty construction of the ditch and failure to have made a dyke;" and of the latter, "Here, too, the fault would seem to have been in the original construction of the ditch rather than in its maintenance."

The writer hereof wrote the opinion in the *Miller* case,

and has, since the majority opinion was submitted, examined the pleadings in both the *Miller* and *Hopper* cases carefully, and finds that in each thereof it was specifically charged that the negligence complained of was in the construction, as well as in the manner of maintenance and failure to maintain. Further, in each of such cases the duty to maintain was not only declared in the body of the opinion, but was, as above indicated, carried into the syllabus and made, unquestionably, not only the law of those cases, but the law of the state, and it is controlling as to the proposition here involved. Again, the expression quoted in the majority opinion from the *Miller* case, to wit, "The improvement was constructed partly by digging a new ditch and partly by using the natural channel of what is known as Muddy creek. The negligence alleged is that the defendant district failed to widen and clear the natural channel of Muddy creek so used as a part of the improvement; and that it was negligent in constructing the new ditch narrower and shallower at some points than others; and that the district negligently allowed drifts and debris to accumulate and remain in the old channel of Muddy creek, thus retarding the escape of the flood waters and causing them to run over and upon plaintiff's lands doing damage to the crops thereon," when fairly construed, conclusively shows that the court was, at the time of the preparation of the quoted expression, considering a case wherein the issues involved both negligent construction and negligent maintenance; otherwise, why the expression, "and that the district negligently allowed drifts and debris to accumulate and remain in the old channel of Muddy creek." It is self-evident that the drifts and debris which were allowed to accumulate and remain in the old channel of Muddy creek must have accumulated and remained after the creation of the district and the construction of the ditch, and not before.

It cannot be challenged that the act in none of its provisions specifically provides that the district shall be liable for negligent construction of its works. Yet, this majority opinion in the syllabus holds that the drainage district

is liable for negligent construction. Why? Simply for the reason that the same is made manifest by the spirit and intent of the act. Is it not, in reason, more manifest from the act that to negligently fail to maintain renders the district liable for damages arising by reason of such negligence? As an illustration, consider the record in this case: Here we have a drainage district, organized in 1909, comprising about 55,000 acres of land, which land was of little value until a system of drainage was perfected, at great expense. This system performed its intended functions for a time, and thereafter was maintained by the district in certain years when such maintenance was necessary and called for. (No negligence is charged in the instant case to have taken place in the original construction.) Then, at the dates charged in the petition, though repeatedly requested and urged so to do by plaintiff and others, the board of directors refused and neglected to maintain the system to the plaintiff's damage, as alleged, by reason of the spread of the accumulated surface waters and the rise of the subsurface waters. Thus, a profitable investment was rendered unprofitable, and a sanitary and healthy condition made insanitary and unhealthy. So, such negligent act not only injuriously affected the owners of the land, but also the general public.

To hold as appellee drainage district insists that we should hold would be to convert this purposeful act of our legislature into an alluring snare. Therefore, we again assert that the drainage district's duty is, not only to properly construct the system of drainage, but also to properly maintain the same.

Further, while there is vested in the drainage district board a reasonable discretion, any abuse of such discretion may be relieved against by a proper proceeding in court. *Sandy v. Western Sarpy Drainage District,* 102 Neb. 713. The same rule is applicable to cities, towns or villages. *City of Pierce v. Schramm,* 116 Neb. 263.

The fact is, plaintiff's damage, if any, is caused solely by the district's negligence in failing to maintain, and not by the collecting of surface water from another watershed

in the district and conducting it in a volume to the land of plaintiff.

It seems that the majority opinion claims to find support in its assertion that there was nothing in the petition to the county board at the time the district was organized, or in the proposition submitted to those having lands in the proposed district, that specifically bound the district to maintain its ditches. To this it is sufficient to say that the petition of the landowners, as indicative of the desire of the petitioners, quotes in full, as a part thereof, the title of the act of 1907, and also facts sufficient to bring the petitioners within the provisions of the act, as such act is indicated by the sections thereof hereinbefore quoted; and the notice published sufficiently embodies such purpose in its provisions. True, there is nothing specific in the act requiring construction of the system, and nothing specific requiring the district to maintain after construction; but, without question, it is conclusively implied that, if the district does construct, it must not construct in a negligent manner, and that after it has constructed its duty is to properly maintain such construction. Otherwise, the purpose of the act is defeated.

Again, it is submitted that in the *Hopper* and *Miller* cases we correctly stated the law applicable to the issues presented; and such law is controlling in the case now before us.