36  189
46  752

UNION PACIFIC RAILWAY COMPANY v. EMIL KELLER.

FILED FEBRUARY 1, 1893.   No. 4412.

1. **Railroad Companies**: DAMAGE BY FIRE FROM LOCOMOTIVE: NEGLIGENCE. In an action to recover damages for loss occasioned by railway fires it devolves on the plaintiff to prove by a preponderance of the evidence that the fire was communicated by sparks or cinders from the railway engines.

2. —— : —— : —— : EVIDENCE. It need not be proved that any particular engine was at fault, but it will be sufficient if it is proved that the fire was set by any engine passing over the defendant's railway, and the evidence may be wholly circumstantial, as, first, that it was possible for fire to reach the plaintiff's property from the defendant's engines, and, second, facts tending to show that it probably originated from that cause and no other.

3. —— : —— : PROOF OF NEGLIGENCE UNNECESSARY. Where the proof shows that a fire originated from an engine running

over the defendant's railway, it is unnecessary for the plaintiff to show affirmatively any defect in the construction or condition of the engine, or any negligence in its management. Negligence will be presumed from the fact that fire was set out.

4. Review: EVIDENCE *held* to sustain the verdict, and there is no material error in the record.

ERROR from the district court of Buffalo county. Tried below before CHURCH, J.

*J. M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error.

*Gillespie & Murphy, contra.*

MAXWELL, CH. J.

This is an action to recover damages for the destruction by fire of a granary and about 1,200 bushels of oats on the plaintiff in error's right of way at Kearney. On the trial of the cause in the court below a verdict was returned for the sum of $300, upon which judgment was rendered. The plaintiff below in his petition alleges, in substance, "that on or about the 29th day of September, 1888, the plaintiff was the owner of a certain granary containing about 1,200 bushels of oats, situated on the defendant's right of way in the city of Kearney, Nebraska, 'by and with the consent and permission of said defendant'; that on or about the 29th day of September defendant, by its servants, etc., in operating and running its engines over said line of road at or near said granary * * * negligently and carelessly permitted an engine to cast out sparks and coals of fire therefrom, which set on fire combustible material situated on defendant's right of way; that said fire spread onto and over the granary of said plaintiff, and totally destroyed the same without any fault or negligence on the part of the plaintiff. That the granary was worth the sum of $75; that it contained 1,200 bushels of oats, whose market value at the

time of the fire in the city of Kearney was twenty-five cents per bushel. Judgment prayed for $375, with interest at the rate of seven per cent per annum from the 29th day of September, 1888, with costs."

In its answer the railway company denies that Keller was the owner of the granary destroyed; denies that he built the same on the company's right of way with the consent of the company; denies that it negligently and carelessly permitted one of its locomotives to cast out sparks and coals of fire, or permitted its engines to set out fire; denies that the plaintiff's building was of the value of $75, or that it contained 1,200 bushels of oats, and denies the damages, etc. It also alleges that the plaintiff's granary was erected on that portion of the right of way held by the Bogue & Sherwood Company under a written lease which exempted the company from liability for loss by fire, etc.

The reply is a general denial.

The testimony tends to show that one David Bohrer, erected the building in question, to store grain in to ship over the railway. The building was erected with the understanding that it should be moved off the right of way whenever the company demanded. Bohrer does not seem to have shipped any grain, but sold the building to Keller who seems to have had a large quantity of oats therein for shipment. The testimony also shows that before the fire the company had leased the ground on which the building stood, with other ground, to Bogue & Sherwood Company; that that company had erected coal sheds on a part of the ground so leased but did not need the ground on which the granary stood, and therefore consented to permit the building to remain for a time. So far as we can see, Bogue & Sherwood Company's lease does not enter into the case. There is testimony in the record tending to show that engine No. 805 passed through Kearney shortly before the fire, going west; that this engine set out fire at five differ-

ent places along the railroad a short distance east of Kearney.   There is also testimony from which the jury would be justified in finding that the engine in question set out the fire.   Certain witnesses were called to prove that the engine in question was in good repair and had modern appliances to prevent the escape of fire.   The scope of this testimony may be inferred from that of W. S. Dolson. He testified in regard to the fire as follows:

Q. Do you know how long before that there was any engine in the yard?

A. I cannot say positively; I know there had not been any in the yard for two hours.

Q. State what locomotive you were handling that day.

A. Eight hundred and five.

Q. How long have you been acting in the capacity of fireman and locomotive engineer?

A. About nine years.

Q. State your experience in handling engines.

A. I have served about three years running one, and over six firing.

Q. State what are the most approved appliances, if any, used to prevent the escape of fire from a locomotive.

A. They have kind of a reflecting plate and a fine netting.

Q. State, if at the time you were handling this engine on this day, your engine was properly provided with a reflecting plate.

A. Yes, sir; and a proper netting also.

Q. State if you examined it.

A. No, sir; I did not examine it myself; the engines are overhauled every trip.

Q. State if your engine was throwing any fire during this trip.

A. She was throwing no fire to speak of that I could see.

Q. State if she was throwing fire while you were running through the yard.

A. We were not working any steam to amount to any-thing, and in working no steam an engine will not throw any fire.

Q. Explain how it is that in working no steam an en-gine will not throw any fire.

A. In working steam the exhaust draws the fire through the flues out of the stack, but if she is shut off there is no exhaust and we cannot throw any.

Q. You were running in the yards without working steam?

A. Yes, sir; I pulled off with a few cars and then backed down; there was only two or three cars and they would not work the engine hard enough to throw fire.

He also states that on the straight smoke-stacks they do not use spark arresters, some other device being substi-tuted.

The court instructed the jury as follows:

"1. To warrant the jury in finding for the plaintiff you must first determine from the evidence whether the fire which occasioned the damage complained of originated from the engine of defendant as averred in plaintiff's petition, and in addition thereto you must find that the fire originated from the negligence of defendant's servants by means of their carelessness, or by means of defective engines or machinery, and the plaintiff did not directly, by his own negligence, contribute toward the destruction of the house and oats sued for herein.

"2. If the evidence fails to satisfy you that the fire which caused the injury originated from the defendant's engine you will inquire no further, and at once render a verdict for the defendant, and you will bear in mind that it is incumbent upon the plaintiff by a preponderance of evidence to satisfy you that the fire which did the injury originated from the defendant's engine.

"3. If you are satisfied that the fire did originate from the engine as claimed, then the burden is upon the de-

fendant to remove a presumption, though small, indeed, of negligence; to show you that the engine of the defendant from which the fire escaped was in good order, properly constructed, and provided with the usual appliances and spark arrester to prevent the escape of fire, and if you so find, then it is your duty to find for the defendant, as the defendant would not be liable if they used the most approved appliances, engine, and machinery, and it was carefully handled and managed by the servants of the defendant, unless the jury believe the defendant or its employes were guilty of actual negligence.

"4. Though the jury believe from the evidence that the engine of defendant were supplied with a 'spark arrester' and other contrivances to prevent the escape of fire from the engine of the most approved style and pattern, yet if the jury believe from the evidence that the employes or servants of defendant operating its locomotives at the time of the fire mentioned in the petition failed or neglected to exercise due care and caution in so operating and running said locomotive, and that for want of such due care and caution the said fire was communicated by said locomotive or engines to the house of plaintiff described in the petition, then they will find for the plaintiff.

" 5. If you find the fire which occasioned the damage complained of originated from defendant's engine by the carelessness of defendant's servants having same in charge, or from a defective engine and one without latest appliances to prevent escape and spread of fire, and you further find the negligence of the plaintiff did not contribute toward the damage, you will find for the plaintiff, and assess his damages at such sum as you think the evidence shows the house and oats were damaged.

" 6. If you find from the evidence that defendant permitted plaintiff to keep the house on the right of way, conditioned that plaintiff should remove the same upon notice, and you find that defendant's engine, by the emission of

sparks from a defective engine, or that by reason of defendant's servants neglecting to exercise due care and caution in operating said engine, and that from such want of care and caution the fire was communicated to plaintiff's house, you will find for the plaintiff.

"7. You are the sole judges of the credit that ought to be given to the testimony of the different witnesses, and you are not bound to believe anything to be a fact because a witness has stated it to be, provided the jury believe from all the evidence that such witness is mistaken or has knowingly testified falsely. Take this case, and from all the facts and circumstances of the case, return such a verdict as you believe to be just."

These instructions, taken together, submit the questions involved fairly, as shown by the testimony, to the jury.

The company also asked the following instructions which were given by the court:

" The jury are instructed that the burden of the proof is on the plaintiff to show conclusively that the fire that burned his barn or granary was negligently and carelessly set out by the defendant, and unless he should so show you must find for the defendant. In considering this, you will bear in mind that even though the plaintiff shows that the defendant's engine did set out the fire, this of itself is not negligence, for if the defendant shows that the engine alleged to have set the fire was provided with all the appliances commonly used in preventing fire from escaping, it will not be liable for such a precaution, will not allow the plaintiff to recover.

" 2. The jury will bear in mind that if the plaintiff does show that the fire was caused by the defendant, it is competent for the defendant to show that the engine or engines alleged to have caused the fire were provided with the best known appliances for preventing fire from escaping from the smoke-stack or ash pan, and if the defendant does prove that it has used all due care and caution to pre-

vent fire by equipping the engine with such appliances, and
that its engine or engines were handled by competent and
careful men and in a safe manner, you must find for the
defendant, even though you may believe the fire was
caused by the defendant's engines. That is, if the defend-
ant has used care to prevent fire it has done all that is re-
quired of it, and will then not be liable.

"3. If you should find that the plaintiff's building
which was burned was on the defendant's right of way,
and was not used as a warehouse for storing goods awaiting
shipment, and that plaintiff, or the one of whom he pur-
chased the building, was ordered by the defendant to re-
move the building from the ground, and neglected and
refused to comply with such order, he cannot recover, and
you must find for the defendant, for, if after being warned
to remove from the right of way, the law presumes he took
all the risk upon himself of loss in not complying with the
demand, and remaining there did so at his own risk. You
cannot presume that he was ignorant of the danger and
exposure to fire.

"4. If you find that the plaintiff was on the defendant's
right of way by virtue of a lease, either verbal or written,
made with the defendant, or from any one as a sublessee,
to whom it had rented the ground, and that one of the
conditions of the lease was that the lessee assumed all risks
of damage by fire caused by defendant as a part of the con-
sideration he cannot recover, and you must find for the
defendant; such a release from damages would be valid,
and constitute a bar to plaintiff's recovering."

These instructions certainly were very favorable to the
company.

It also asked the following instructions, which were
given as modified:

"1. The jury are instructed that the burden of the
proof is on the plaintiff to show conclusively that the fire
that burned his barn and granary was negligently and care-

lessly set out by the defendant, and unless he should so show, you must find for the defendant. In considering this, you will bear in mind that even though the plaintiff shows that the defendant's engine did set out the fire, this of itself is not negligence, for if the defendant shows that the engine alleged to have set the fire was provided with all the appliances commonly used in preventing fire from escaping, it will not be liable for such a precaution, will not allow the plaintiff to recover. (Modified as follows :) Unless you find from the evidence that by the carelessness of the defendant's servants having the engine in charge.

" Modifications excepted to by the defendant.

" 3. If you find that the plaintiff's building, which was burned on the defendant's right of way, and was not used as a warehouse for storing goods awaiting shipment, and that plaintiff, or the one of whom he purchased the building, was ordered by the defendant to remove the building from the ground and neglected and refused to comply with such order, he cannot recover, and you must find for the defendant; for, if after being warned to remove from the right of way, the law presumes he took all the risk upon himself of loss, in not complying with the demand, and remaining there did so at his own risk. You cannot presume that he was ignorant of the danger and exposure to fire. Unless you find that the fire was occasioned by the gross negligence of the defendant.

" Modifications excepted to by defendant.

" 4. If you find that the plaintiff was on the defendant's right of way by virtue of a lease, either verbal or written, made with the defendant or, from any one as a sublessee to whom it had rented the ground, and that one of the conditions of the lease was that the lessee assumed all risks or damage by fire caused by defendant as a part of the consideration, he cannot recover, and you must find for the defendant; such a release from damages would be valid and would constitute a bar to plaintiff's recovering. (Modified

as follows:) Unless you find the fire was occasioned by
the gross negligence of the defendant.

"Modifications excepted to by the defendant."

These instructions, even with the modifications, are very
favorable to the plaintiff in error, and it cannot complain
on that ground.

It devolves on the plaintiff to prove by a preponder-
ance of the evidence that the fire was communicated by
sparks or cinders from the railway engines. It need
not be shown that any particular engine was at fault, but
it will be sufficient if the fire is proved to have been set by
any engine passing over the defendant's railway, and the
evidence may be wholly circumstantial, as, first, that it
was possible for fire to reach the plaintiff's property from
the defendant's engines, and, second, facts tending to show
that it probably originated from that cause and no other.
(*Field v. N. Y. Central R. Co.*, 32 N. Y., 339; *Karsen v.
Milwaukee & St. P. R. Co.*, 29 Minn., 12; *Longabaugh v.
Virginia City & T. R. Co.*, 9 Nev., 271; *Grand Trunk R. Co.
v. Richardson*, 91 U. S., 454; 8 Am. & Eng. Encyc. of Law,
7–8, and cases cited.) When, however, the evidence shows
that a fire originated from an engine running over the de-
fendant's railway it is unnecessary for the plaintiff to show
affirmatively any defect in the construction or condition of
the engine or any negligence in its management. (*Bur-
lington & M. R. R. Co. v. Westover*, 4 Neb., 268.) In the case
cited it is said : "There is a direct conflict of authorities
in this country on this question. In many of the cases,
particularly the early ones, it being held that it devolved
on the plaintiff to prove negligence on the part of the de-
fendant. The better rule appears to be, where it is shown
that a fire has originated from sparks thrown out by an
engine, to require the company to show that their engine
was properly constructed, equipped, and operated. The
reason for the rule, as stated in a late case in Wisconsin,
being "that the agents and employes of the road know, or

are at least bound to know, that the engine is properly equipped to prevent fire from escaping, and that they know whether any mechanical contrivances were employed for that purpose, and if so, what was their character. Whilst, on the other hand, persons not connected with the road, and who only see trains passing at a high rate of speed, have no such means of information." (*Spaulding v. Chicago & N. W. R. Co.,* 30 Wis., 122; 8 Am. & Eng. Encyc. of Law, 9–10, and cases cited.) The cases on this question are classified by states in the work last mentioned, from which it will be seen that a majority of the decisions sustain the rule as above set forth. There was no error in the modification complained of. Even then they were prejudicial to the defendant in error, but no complaint is made on that ground by him. Upon the whole case there is no material error in the record, and the judgment is

AFFIRMED.

THE other judges concur.