THOMAS R. SHIPMAN, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED JANUARY 5, 1907. No. 14,493.

1. **Railroads:** EVIDENCE: PRESUMPTION OF NEGLIGENCE. In an action against a railroad company for damage for loss by fire alleged to have been set out from one of defendant's engines, proof of the fact that the damage did result from fire so set out, without any fault on the part of the complainant, is sufficient to raise a presumption of negligence in the management or equipment of the engine.

2. **Instruction:** REVIEW. In such a case, however, it is prejudicial error to instruct the jury that, if the evidence is evenly balanced on the question of defendant's negligence, they should find a verdict for plaintiff.

APPEAL from the district court for Dawes county: JAMES J. HARRINGTON, JUDGE. *Reversed.*

*N. K. Griggs,* for appellant.

*J. E. Porter, contra.*

OLDHAM, C.

This was an action for damages for the destruction of a stack of straw and fodder by fire alleged to have been

started by sparks from an engine of the defendant. There was a trial of the issues to the court and jury, verdict and judgment for plaintiff, from which the defendant appeals.

The evidence with reference to the origin of the fire is that the stack of straw was about 200 feet north of defendant's line of railroad; that a long and heavily loaded freight train passed the stack about five or ten minutes before the fire was discovered; that the engine of the train was puffing and laboring in an effort to increase its speed at the time it passed the straw stack; and that there was a strong wind blowing from the southwest when the train passed. The fire was first discovered by the crew in charge of a second freight train that followed about ten minutes after the first train. It is testified, without dispute, that the straw stack was burning before the second train reached it, so that it is clear from the record that, if the fire started from defendant's engine, it must have been from the engine pulling the first train. There was no rubbish or combustible material along the right of way near the stack, and no cinders or ashes were found along the track, and no evidence of any fire between the track and the stack of straw, so that it is clear that, if the fire came from the engine, it must have been communicated by a spark or sparks which escaped from the smokestack of the engine, and not from coals and cinders dropping from the firebox. Evidence was introduced on the part of the railroad company tending to show that the engine which pulled the train first passing the stack was in first-class condition and contained all modern equipment for the prevention of the spread of fire, and that it was being operated on a trial trip by a skillful engineer under the supervision of an inspector of engines; that the engine was examined and reported on by the expert in charge at Ardmore, the last station passed before the fire, and again at Crawford, the first station reached after the fire; and that each of these examinations showed the engine in perfect condition.

In this state of the record, the court, in paragraph 2

of instructions given on its own motion, after stating correctly the general rule of liability of railroads for negligently setting out fire from their passing trains, gave the following direction: And in this case if you find that plaintiff has established by a preponderance of the evidence that fire did escape from the engine of defendant, and caused the destruction of plaintiff's property, and that plaintiff's property was destroyed without any carelessness or negligence on his part, then your verdict should be for the plaintiff, unless the defendant has established by a preponderance of the evidence that its engine was fully supplied with a spark arrester and other contrivances of the most approved style and pattern to prevent the escape of fire from the engine, and that the defendant's engine was being operated by careful and skillful men, and that said fire did not originate from defendant's engine by the carelessness and negligence of defendant's servants having the same in charge. And if the defendant has established, by a preponderance of the evidence, the facts as indicated in this instruction which the defendant is required to establish, then your verdict should be for the defendant. But, if the evidence as to these facts should be evenly balanced, or should preponderate in favor of the plaintiff, then your verdict should be for the plaintiff, and it will be your duty to assess plaintiff's damage at such sum as you think the evidence shows plaintiff has sustained, if you find for the plaintiff." Neither in this country nor in England are steam railroads, in the absence of a statute to the contrary, held liable for the accidental escape of fire in their operation. Negligence in the spread of fire is the gist of an action for damages against them. But, while railroad companies are not insurers against accidental fires started from their engines, they are required to use a proper degree of care both in the appliances used and in the operation of their trains to avoid liability. In other words, they must use the best modern appliances known to the occupation, and must keep them in good repair and have them operated

with care and caution by those in charge of the trains. 2 Thompson, Commentaries on Law of Negligence, sec. 2232. In this jurisdiction proof of the fact that damage has resulted from a fire started from a railroad engine, without any negligence on the part of the complainant, is sufficient to raise a presumption of negligence in the management or equipment of the engine. *Burlington & M. R. R. Co. v. Westover*, 4 Neb. 268; *Union P. R. Co. v. Keller*, 36 Neb. 189. While there is, perhaps, sufficient circumstantial evidence in the record to support the find: ing of the jury that the fire originated from defendant's engine, yet the evidence of such fact is not wholly convincing, and it is clear, as before stated, that, if the fire came from the engine, it must have been from a spark thrown from the smokestack of the engine. It is in evidence, and also a matter of almost common information, that no modern appliance has yet been devised that will absolutely prevent the escape of sparks from the best constructed engines. Consequently, where the only proof of escape of fire is by reason of a spark from the smokestack of the engine, presumption of negligence from such fact is much less convincing than is proof of the escape of fire by cinders and coals dropping from the firebox, since experience shows that the fixebox can be so constructed and handled as to absolutely prevent the escape of fire therefrom. We think, therefore, that the instruction above set out was erroneous and prejudicial in saying: "But, if the evidence as to these facts should be *evenly balanced*, or should preponderate in favor of the plaintiff, then your verdict should be for the plaintiff."

This court is now committed to the doctrine that the burden of proof does not shift during the progress of the trial. While the necessity of the case has induced us to go to the limit in indulging presumptions as substitutes for proof in establishing negligence in the spread of fires from railroad trains, yet in the absence of a statute making railroads insurers against loss by fire started from their engines, we see no reason to extend the rule of

liability beyond the doctrine announced in *Burlington & M. R. R. Co. v. Westover* and *Union P. R. Co. v. Keller, supra.* Especially should this not be done in a case like the one at bar, in which plaintiff's showing of negligence hangs only on the eyebrows of a very weak and emaciated presumption.

We therefore conclude that the giving of the instruction above set out was prejudicial to the rights of the defendant, and we recommend that the judgment be reversed and the cause remanded for further proceedings.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.