JANETTE E. McKEE, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED FEBRUARY 25, 1913. No. 16,853.

1. **Railroads:** ACTION FOR DAMAGES: EVIDENCE. The evidence examined, and *held* to sustain the verdict.

2. **Damages:** INJURY TO CROPS. In case of the destruction of a permanent or perennial crop, such as alfalfa, the measure of damages is the difference between the value of the land before and after the destruction of the crop. *Thompson v. Chicago, B. & Q. R. Co.,* 84 Neb. 482; *Morse v. Chicago, B. & Q. R. Co.,* 81 Neb. 745.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Byron Clark, W. S. Morlan* and *Arthur R. Wells,* for appellant.

*John Everson, contra.*

HAMER, J.

The plaintiff recovered a judgment against the defendant in the district court for Harlan county for $555.42 damages because of the alleged destruction of 30 acres of alfalfa by fire alleged by the plaintiff to have been set by one of the defendant's locomotives. It is claimed in the petition that the defendant negligently and carelessly caused and permitted sparks to be cast off from the engine, and thereby ignited grass and weeds and other combustible material at and along defendant's right of way, and that the fire spread over the land of the plaintiff.

The evidence shows that one of the defendant's freight trains went by at about 2 or 3 o'clock in the afternoon, and that directly afterwards a fire was discovered, which spread over the alfalfa field and did the damage complained of. The fire seems to have started about 100 feet from the track, and before the train was out of sight. An examination of the evidence would seem to justify the conclusion that the verdict is sustained by the evidence, tending to show that sparks from the engine of the defendant set the fire. It is contended by the defendant that the rule touching the sufficiency of circumstantial evidence laid down in the case of *Union P. R. Co. v. Keller,* 36 Neb. 189, should be held to apply to this case. The rule as quoted is: "It devolves on the plaintiff to prove by a preponderance of the evidence that the fire was communicated by sparks or cinders from the railway engines. It need not be shown that any particular engine was at fault, but it will be sufficient if the fire is proved to have been set by any engine passing over the defendant's railway, and the evidence may be wholly circumstantial, as, first, that it was possible for fire to reach the plaintiff's property from the defendant's engines, and, second, facts tending to show

that it probably originated from that cause and no other."
It is said in defendant's brief: "Beyond the bare state-
ment that it was a *'dry day,'* no evidence was offered as to
the condition of the field, from which the court can con-
clude whether a fire would likely be started from a loco-
motive; nor is there any evidence whatever from which the
jury might infer that there was no other possible source
from which the fire might have originated." The plaintiff's
husband testified: "In the afternoon—I think between 2
and 3 o'clock—a freight train came through, going west,
and it set fire over there in the alfalfa field, where I had a
field of about 35 acres of alfalfa that I sowed that spring."
He testified that the fire did burn off the alfalfa and the
grass and weeds; that the alfalfa was a good stand; that
he and his wife wet some gunny sacks and went out and
tried to put out the fire; that the value of the land with
the alfalfa on it was $100 an acre, and that immediately
after the fire the land was worth $75 to $80 an acre.
George Davidson testified that he saw the train go by in
the afternoon; and that it was warm that day; and that
before the train was out of sight there was quite a smoke;
and that it (the fire) went so fast after it got started that
he did not think it was worth while to do anything with
it; that it burned pretty nearly all over the 35 acres of
alfalfa; that the alfalfa was a good stand; that the wind
was blowing a pretty good gale, and that the fire burned
dead matter in the alfalfa, weeds or foxtail mixed with it;
that the fire started about 100 feet from the track; that
the field of alfalfa was adjoining the right of way; and
that the fire started in the field.

In *Thompson v. Chicago, B. & Q. R. Co.,* 84 Neb. 482, 23
L. R. A. n. s. 310, the evidence showed that two persons
saw a fire burning on a railroad right of way shortly after
an engine passed, and it was held that this evidence was
sufficient to sustain the finding that the fire spread from
the defendant's engine. We think the evidence in the
instant case fully justifies the conclusion that defendant's
engine started the fire.

It is next contended that the verdict was excessive and evidently due to the influence of passion and prejudice. It appears from the evidence that about 35 acres of alfalfa was burned over. While it is true that the evidence might have been more specific touching the condition of the alfalfa after the fire ran over it, the foregoing evidence was enough to enable the jury to form an intelligent conclusion concerning the amount of damages sustained. In *Thompson v. Chicago, B. & Q. R. Co., supra,* the jury were instructed, concerning the loss of an alfalfa crop, that the damages might be shown by showing the value of the land before the crop was burned and its value after the crop was destroyed. The jury were instructed that the measure of damages for the loss of the alfalfa would be "the difference in the value of the land with the stand of alfalfa as proved immediately prior to its destruction and the value of the land at and immediately after the destruction of the alfalfa." This court then said, Judge LETTON delivering the opinion: "There is a difference in conditions between an ordinary annual crop and a permanent crop, such as alfalfa, which justifies and requires a different rule in the measurement of damages, and we are of the opinion that a fair criterion of the damage suffered by the destruction of a good stand of alfalfa would be the difference between the value of the land with such crop standing and growing upon it and the same land without such crop." This view seems to fully sustain the verdict, supported as it is by the evidence.

In *Morse v. Chicago, B. & Q. R. Co.,* 81 Neb. 745, this court said in the syllabus: "Where the planting of land to a perennial crop, like alfalfa, increases the market value of such land, it is proper to show the damage done by the destruction of a stand thereof by proving the value of the land with and without such stand." In the case cited the plaintiff offered evidence which tended to prove that the overflow of water complained of in that case killed a stand of alfalfa growing on about 30 acres of land, and he offered testimony and was permitted to show

what the land was worth with the alfalfa growing upon it, and what it was worth without the alfalfa. The learned commissioner who delivered the opinion of this court said: "In this we discover no error. It is well known that seeding to alfalfa is a hazardous process, the result of which cannot be accurately predicted, and failures often result from conditions altogether beyond the control of the husbandman. Under these circumstances, the difference in value between land having a successful stand of alfalfa and land without the same would be a safer measure of the value of such stand than would the cost of again seeding to alfalfa."

A careful examination of the evidence leads us to conclude that it fully sustains the verdict. We find no error, and the judgment of the district court is

AFFIRMED.