DANIEL G. HOPPER, APPELLEE, v. ELKHORN VALLEY DRAINAGE DISTRICT, APPELLANT.

FILED MAY 6, 1922. No. 21784.

1. **Damages:** INSTRUCTIONS. Instruction 26 set out in the opinion. on the subject of damages to growing crops, examined, and *held*, under the circumstances shown by the record, not erroneous.

2. **Drains:** NEGLIGENCE: LIABILITY OF CORPORATIONS. A drainage district corporation organized under the laws of this state, although a local corporation clothed with powers of a public nature, is liable for damages caused by its negligence in the construction or maintenance of its works.

3. ———: DAMAGES: RIGHT OF ACTION. Damages caused unnecessarily by the negligence and improper construction and maintenance of the improvements of a drainage district corporation cannot be anticipated and a right of action accrues therefor when the damages occur.

4. ———: ———: ———. A party who sells and conveys to a drainage district corporation a right of way through his lands, and in such conveyance releases such corporation from all claims for damages by reason of the occupancy and use of the land conveyed, may nevertheless recover damages caused by the carelessness and negligence of the district in the construction and maintenance of its improvements.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*McKenzie, Cox, Burton & Harris,* for appellant.

*Baldrige & Saxton, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., BUTTON and COLBY, District Judges.

COLBY, District Judge.

The action was brought to recover damages on account of the overflow of plaintiff's lands, alleged to be due to the negligent construction and maintenance of a drainage system through and near the lands of plaintiff.

The facts in general appearing of record are that the defendant and appellant is a corporation organized under the name of the Elkhorn Valley Drainage District in the year 1909, authorized by the provisions of chapter 153, Laws 1907, and later laws amendatory thereof and supplementary thereto, for the purpose of constructing ditches and controlling surface and running waters within the limits of a drainage district embracing many thousands of acres of land in Sarpy and Douglas counties, Nebraska, including plaintiff's lands; that in 1910 this drainage corporation constructed a ditch about five miles long, referred to as Ditch No. 3, running from a point in the northwest corner of section 5, township 15, range 10, southeasterly through four sections to a point near the south boundary line of the southwest quarter of section 15. The ditch as constructed joined with and continued into a long narrow lake, sometimes called Hopper lake, running southeasterly through section 15 to a point about 600 feet west of the southeast corner of said section, at which point, by an abrupt angle, it turned nearly straight east about 1,300 feet to and cutting through the west bank of the Elkhorn river, thus making its entry into the river at approximately a right angle; this latter part or ditch is generally referred to as the "outlet ditch."

It is stated in the brief of appellant's counsel that the district which the defendant corporation was organized to drain comprises about 55,000 acres of land lying along the west bank of the Elkhorn river near the village of Waterloo. The plaintiff's farm consists of 480 acres of land situate in an almost square body within the drainage district on the west side of the Elkhorn river and about a mile

southeast of the village of Waterloo. The south half of section 15 was owned by plaintiff and was his home place upon which were located his residence and farm buildings. With the exception of the plat of ground on which the buildings stood and the part occupied by the ditch and the narrow lake, the plaintiff cultivated the south half of section 15 and also owned and cultivated the northwest quarter of section 22, in the same township and range. During the seasons of the years 1915, 1916, 1917 and 1919 the plaintiff had planted and there were growing on his lands varieties of farm products in different stages of development. In each of said seasons his lands were flooded and his crops submerged and partially or entirely destroyed.

The plaintiff brought this action for damages against the defendant, alleged that his loss was directly due to the defective and negligent construction and maintenance of said ditches, setting out four separate causes of action relating to the four different seasons in which the losses occurred, particularizing the crops growing on his lands, the extent to which they were injured or destroyed, and the amount of damages, all of which he charged were the result of the negligent acts and omissions of the defendant in the construction and maintenance of said ditch No. 3 and the outlet ditch.

The defendant in its answer admitted the construction of the ditches, but for its first defense alleged that such ditches were constructed according to the plans and specifications prepared by a skilful and competent engineer, and that if the plaintiff suffered damages the same were due to the acts of the engineer, for which the defendant was not responsible. For a second defense the answer averred that the plaintiff had executed deeds and conveyances to defendant for a strip of land through his farm occupied by and upon which the ditches were constructed and thereby released the defendant from the damages claimed arising from the occupancy and use of the land so conveyed for drainage purposes. The answer further alleged that the plaintiff had examined such plans and speci-

fications, had influenced the engineer to draw them improperly, if they were so drawn, that plaintiff was a director of the district when a floodgate was placed in the outlet ditch, and that he was estopped to claim damages. The answer further charged that whatever loss was suffered by plaintiff was due to his lands being low and too wet for agricultural purposes, and being subject to overflow from the Elkhorn river caused by the negligence of the Union Pacific Railroad Company in the construction of an embankment which diverted such river and caused its overflow. The plaintiff's reply was, in substance, a general denial of the allegations of the answer.

A trial was had to a jury, who found a verdict in plaintiff's favor in the sum of $17,743; a motion for a new trial was overruled and a judgment rendered upon the verdict, from which judgment and proceedings the defendant drainage district appeals to this court.

The first assignment of error urged by counsel for appellant is that the district court erred in giving instruction No. 26 as to the measure of damages, which instruction, for convenience, we quote in full as follows:

"If you find for the plaintiff you should assess his damages in accordance with the following principles:

"The measure of damages to a growing crop by a wrongful act or omission which destroys it is its value at the time and place of destruction.

"The measure of the damage to a growing crop injured but not rendered worthless is the difference between the value of the crop before and after the injury at the time and place thereof.

"Where a growing crop is injured but not rendered entirely worthless as a direct result of the acts and omissions of the defendant, the damage to it may be measured, under these rules, by the difference between the value at maturity of the probable crop, if there had been no injury, and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury.

"In determining the value of the crop of any year at the time of its injury or destruction, you should take into consideration the kind of crops planted, the nature of the land, the kind of season, whether wet, dry, or normal, what crops such land according to the season would ordinarily yield, the state of the crop's growth when injured or destroyed, the average yield of similar land in the neighborhood, the crop of which was cultivated in the same way and not injured, the market value of the crop injured and the market value of the reasonably probable crop without injury at the time of maturity, the expense that would have been incurred after the injury of fitting for market the portion of the crop the wrongful act prevented from maturing, the time of the injury, the circumstances which conditioned the probability or improbability of the maturing of the crops in the absence of injury, and all other facts and circumstances shown by the evidence tending to establish such value.

"In case of the destruction of a perennial crop like alfalfa, the measure of damages is the difference between the value of the land immediately before the injury with the crop growing thereon, and the value of the land immediately after the destruction of the crop.

"If plaintiff was prevented from planting any part of his lands by reason of flooding due to negligence of defendant, his measure of damages on this account would be the reasonable rental value of such land for that season, together with the reasonable expense of preparing the land for planting.

"The only damages, if any, which plaintiff may recover in this action are such as resulted directly from wrongful acts of defendant; and if the jury believe that any part of such damages was caused by the Elkhorn river overflowing its bank north of plaintiff's lands independently of any negligence of defendant, the defendant would not be liable for such damages.

"Furthermore, the evidence must establish the amount of all items of damage with reasonable certainty or they can-

not be recovered.   On any amounts you find for plaintiff you should add interest at 7 per cent. per annum from the date of the injury to this date.

"If you find for the defendant you will simply so say by your verdict."

Counsel for appellant contend that this instruction is erroneous in giving the wrong measure of damages where a crop is partly destroyed but not rendered worthless, and that the second paragraph of the instruction is in conflict with the third paragraph.

Under the four causes of action contained in plaintiff's petition there were several different conditions appearing in the pleadings and the evidence which the district court intended to cover by this instruction.   The second paragraph was:

"The measure of the damage to a growing crop injured but not rendered worthless is the difference between the value of that crop before and after the injury at the time and place thereof."

It is conceded that this is a correct general statement of the law as to the measure of damages.   That part of the instruction objected to as in conflict with this paragraph is the third paragraph, which tells the jury how to measure such damages as follows:

"Where a growing crop is injured but not rendered entirely worthless as a direct result of the acts and omissions of the defendant, the damage to it may be measured, under these rules, by the difference between the value at maturity of the probable crop, if there had been no injury, and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury."

The first two paragraphs plainly and briefly state the law; the third paragraph, to which serious objection is made, just as plainly instructs the jury how to arrive at or measure the damages stated in the second paragraph.   It was clearly meant to be a method of determining the damages or of arriving at the difference between the value of

the crop before and after the injury at the time and place thereof. The one is not inconsistent or in conflict with the other. In the latter part of the third paragraph mention is made of the probable crop which was prevented from maturing by the injury, and later on in the fourth paragraph of this instruction the court goes into the matter more fully and the jury is instructed carefully and plainly in this discriminating language:

"In determining the value of the crop of any year at the time of its injury or destruction, you should take into consideration the kind of crops planted, the nature of the land, the kind of season, whether wet, dry, or normal, what crops such land according to the season would ordinarily yield, the state of the crops' growth when injured or destroyed, the average yield of similar land in the neighborhood, the crop of which was cultivated in the same way and not injured, the market value of the crop injured and the market value of the reasonably probable crop without injury at the time of maturity, the expense that would have been incurred after the injury of fitting for market the portion of the crop the wrongful act prevented from maturing, the time of the injury, the circumstances which conditioned the probability or improbability of the maturing of the crops in the absence of injury, and all other facts and circumstances shown by the evidence tending to establish such value."

When the paragraph so strongly objected to is considered in connection with the remainder of the instruction there appears to be no antagonism or inconsistency. The court substantially instructed the jury to take into consideration all of the hazards to the growing products before maturity; while the chances or risks of hail, windstorms, drouths, floods, and other factors in the growth of the crop were not specially and particularly mentioned by name, yet the language of the court was broad enough to cover all of these risks and any others that might be expected to have a bearing upon the maturity of the crop. The several parts of the instruction, when properly con-

sidered, are not in conflict with each other or inconsistent, as to chances and risks, with the cases cited by counsel for appellant of *Pribbeno v. Chicago, B. & Q. R. Co.*, 81 Neb. 657, or *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745, or *Clague v. Tri-State Land Co.*, 84 Neb. 499. The chances and risks enumerated in the cases cited were not eliminated from the instruction given in the case at bar, but on the contrary were carefully retained therein by the clear and explicit general language of the court, which included all "the circumstances which conditioned the probability or improbability of the maturing of the crops."

Another objection urged by counsel for appellant is that the instruction pertaining to the measure of damages permitted the jury to take into consideration the nature and character of the season as it actually was, and not as it might have been; in other words, that the instruction permitted the jury to assess the damages upon the theory that the season for raising crops was the most favorable and that there was no hazard, such as early frost, too much rain, hailstorms, etc.

This objection does not seem to be well taken and appears to arise from a misunderstanding or improper interpretation of ordinary language, as the court told the jury plainly and in unequivocal language that in determining the value of the farm products of any year it should take into consideration "the circumstances which conditioned the probability or improbability of the maturing of the crops in the absence of injury, and all other facts and circumstances shown by the evidence tending to establish such value;" this would properly include those arising before, at the time of, and after the injury, for the purpose of arriving at "the difference between the value of that crop before and after the injury at the time and place thereof," which, under the law, is the true measure of damages to a growing crop injured but not rendered worthless.

This instruction, although having several paragraphs, is but one instruction and must be interpreted as such. The

subsequent parts are to be considered in connection with the first part as an elucidation of the bald statement of the law regarding the measure of damages and when this is done all the parts of the instruction are in perfect harmony and consistent with each other.

A further objection is urged to this instruction that, while there was evidence introduced by the plaintiff tending to show that some of the farm products were destroyed after they were planted and before they had reached such a state of maturity as to have a value as crops, yet that there was no positive testimony as to the value of the crops at the time of their destruction; that no witness testified that they were worth $5 or $10 an acre at the time of their destruction, and that in the absence of such evidence the jury could not arrive at the value of the crops.

It would seem that this objection is also not well taken and not based upon the best reasoning and rules of evidence. What the jury were entitled to consider was all the evidential facts bearing upon the question of damages and all the circumstances and conditions, both before, at the time of, and after the injury, and from these they would come to a conclusion as to the damages at the time and place of the injury. The testimony of a witness as to what, in his opinion, a growing crop on the market was worth which had no market value would be almost useless, unless based on all the facts, circumstances and conditions which should be given to the jury bearing upon the matter, and it was surely within the province of the jury, from a consideration of all of these, to form their own opinion as to the value. The jury would not be materially aided in any way by the opinion of a witness who could know nothing more about it than the jury, and who, at best, would simply be giving his opinion. When there is no market for immature crops, for sprouting, growing or undeveloped products, their value can be arrived at only by taking into consideration the probable yield, the conditon of the season, the average yield, the probability of hailstorms, drouth, excessive rainfall, early frosts and other hazards, and all

other conditions, facts and surrounding circumstances in connection with the average market value of such products at the time of their maturity. This seems to have been very lucidly and intelligently covered by the instruction and the whole matter submitted to the jury for its consideration and judgment.

In the case cited by counsel for appellant, *Baltimore & O. S. W. R. Co. v. Stewart*, 128 Ill. App. 270, the rule under consideration by that court was the measure of damages where the crop was destroyed before it had reached that state of maturity having a market value, and the court properly held in such case that the measure of damages for the destruction of such a crop was the cost of planting the crop, plus the reasonable market value of the land for that season. This rule is applicable in case the crop is up, but not so far matured that the product can be fairly determined. It is very difficult to arrive at the damage where the crop is destroyed before it has reached such a state of development that it has a market value, and testimony in the nature of personal opinions tending to show such value is to be regarded as of much weight only when all things conditioning the maturity of such a crop are shown and taken into consideration. It has no market value and it seems reasonable that no witness can give an opinion as to a value which does not exist. We must conclude that the jury is to find the value, not from opinions, but from a consideration of all the evidential facts, conditions and circumstances, climatic and otherwise, having a bearing upon its maturity and its probable market value at such time. It cannot add to the weight which a jury should give to the facts to have a witness give his opinion thereof; all such facts having a bearing upon the value of the crop at the time of its destruction were, under the court's instruction, taken into consideration by the jury in arriving at its verdict.

Evidence of all the facts, conditions and circumstances bearing upon the question of value was offered by plaintiff and received in evidence on the trial, and generally

without objection, and surely it is not now seriously contended by counsel for appellant that such testimony was incompetent. Indeed, after making and strongly urging the objections which we have just considered, counsel for appellant in their brief naively say that such evidence "would tend to throw some light upon the value of the crop at the time of its destruction or the value before and after its destruction." We think, as before stated, that the contention that direct testimony, that is, in this instance, the opinions of witnesses as to the value of crops which have no market value, is not essential; that the best evidence is not such opinions, but testimony showing the facts, conditions and circumstances having a bearing upon the matters at issue, from which the jury can form its own opinion. The ingenuous admission of counsel quoted above certainly deprives this objection of much of its force and vigor.

The instruction of the district court, which we have been considering covered not only the one kind but the four kinds of damages required by the causes of action and the evidence: The first, where the growing crop was totally destroyed; the second, where the growing crop was injured but not rendered worthless; the third, the destruction of the perennial crop of alfalfa; and the fourth, where the plaintiff was prevented from planting any part of his land by reason of flooding due to the negligence of the defendant.

The instruction objected to in part and in its entirety is supported and justified by the best considered judicial authorities and is fully authorized by the decisions in the following cases: *American Smelting & Refining Co. v. Riverside Dairy & Stock Farm,* 236 Fed. 510; *United States Smelting Co. v. Sisam,* 191 Fed. 293; *McClure v. City of Broken Bow,* 81 Neb. 384; *Morse v. Chicago, B. & Q. R. Co.,* 81 Neb. 745; *Berard v. Atchison & N. R. Co.,* 79 Neb. 830; *Thompson v. Chicago, B. & Q. R. Co.,* 84 Neb. 482; *Anderson v. Chicago, B. & Q. R. Co.,* 102 Neb. 497; *McKee v. Chicago, B. & Q. R. Co.,* 93 Neb. 294.

It is plain that the district court, after a full knowledge

and thorough examination of the adjudicated ·cases, carefully digested them and correctly restated the law applicable to this case, using as a model the opinion in *United States Smelting Co. v. Sisam, supra.* This case was argued before Judges Sanborn and Vandeventer, circuit judges, and William H. Munger, district judge, and the opinion of the court was delivered by Judge Sanborn. The authorities cited by the learned judge are exhaustive on both sides. After a careful review of the same and the anouncement of the law as to the measure of damages and the rule for the measurement of such damages, where the growing crop was injured but not rendered worthless, the same as in the case at bar, Judge Sanborn used the following language:

"This is a reasonable and practical rule for the measurement of such damages. It is not in conflict with the general current of authority, and it is a necessary and natural deduction from the established rule that the value at maturity of the probable crop, the value of the actual crop, and the expense of fitting for market that portion of the probable crop which does not mature is competent evidence for the jury to consider in determining the damage to the growing crop at the time of its injury."

In regard to the rule for measuring the damages to a growing crop injured but not rendered worthless, the following authorities are found particularly to support and authorize that part of the instruction given by the district court and strenuously objected to by appellant: *Lester v. Highland Boy Gold Mining Co.,* 27 Utah, 470; *Teller v. Bay & River Dredging Co.,* 151 Cal. 209; *Dennis v. Crocker-Huffman Land & Water Co.,* 6 Cal. App. 58; *Little Rock & Ft. S. R. Co., v. Wallis,* 82 Ark. 447; *Risse v. Collins,* 12 Idaho, 689; *Hunt v. St. Louis, I. M. & S. R. Co.,* 126 Mo. App. 261; *Berard v. Atchison & N. R. Co.,* 79 Neb. 830; *Kansas City, M. & O. R. Co. v. Mayfield,* 107 S. W. (Tex. Civ. App.) 940; *International & G. N. R. Co. v. Pape,* 73 Tex. 501; *Gulf, C. & S. F. R. Co. v. McGowan,* 73 Tex. 355; *Colorado Consolidated Land & Water Co. v. Hartman,* 5

Colo. App. 150; *Shotwell v. Dodge*, 8 Wash. 337; *Galveston, H. & S. A. R. Co. v. Borsky*, 2 Tex. Civ. App. 545; *Smith v. Chicago, C. & D. R. Co.*, 38 Ia. 518; *Jones & Jones v. Cooley Lake Club*, 122 Mo. App. 113; *Anderson v. St. Louis, I. M. & S. R. Co.*, 129 Mo. App. 384.

While there are judicial decisions of high authority holding that damage to growing crops at the time they are injured or destroyed may not be measured by the jury by the difference between the market value at the maturity of the probable crop without the injury and the value of the injured crop, less the expense of fitting for market the portion of the probable crop which did not mature, yet, as we have stated, the clear weight of the best authorities is in opposition to this and in favor of the rule stated in the instruction.

The next assignment of error is that the court erred in overruling the defendant's motion for a directed verdict at the close of plaintiff's testimony, for the reason that the plaintiff in the right of way deeds given by him released the defendant from all damages such as are sought to be recovered in this action.

The clause in the first drainage right of way deed executed by Daniel G. Hopper and his wife to the Elkhorn Valley Drainage District, which has a bearing on this assignment, purports to convey "a strip of land four rods wide, being two rods wide on the west side and two rods wide on the east side of the center line of the cutoff ditch, drainage ditch or levee, each or all, as the case may be, as the same is now surveyed and located by second party, and extending across the center of the S. E. quarter of section 15, due south to the south side of section 15 in township 15, range 10, together with any and all desired access thereto by said drainage district, its agents, contractors, representatives and employees, across other portions of said land of first parties. Said land is to be used perpetually according to the present or future plans of said drainage district, its successors and assigns for drainage purposes. Said parties of the first part also grant the right

to throw dirt so far as desired outside of and adjoining said strip of ground. To have and to hold the same, together with all the appurtenances thereto .belonging, to the said second party, its successors and assigns for drainage district purposes as aforesaid forever." The first parties hereby release all damages and claims thereto on account of and by reason of the occupancy and use of said land as above mentioned." The consideration alleged in said deed is the sum of "one dollar and other valuable consideration."

The second drainage district right of way deed is in the same form and contains substantially the same provisions as to the use of land and release of all damages and claims for use and occupancy.

The contention of counsel for appellant is that these deeds constitute a bar to plaintiff's recovery, and that the clauses quoted contained in said deeds release all damages and claims against the drainage company for the occupancy and use of said lands so conveyed, and that plaintiff's action and several causes of action for damages are each released by said provisions.

In support of this contention it is urged incidentally on the part of appellant that the conveyances and releases evidenced by these deeds were the inducements for appellant to construct the ditches, and that, as there was no evidence that the defendant did not construct its drainage system in accordance with its "present or future plans," the court erred in overruling defendant's motion for a directed verdict; that the damages and claims for use and occupation specially mentioned in said drainage right of way deeds released the defendant from all damages such as are sought to be recovered in this case.

The allegations in plaintiff's petition are that the defendant carelessly and negligently constructed its drainage ditches and thereafter maintained the same so that the plaintiff's lands were flooded and his crops injured or destroyed; that the negligence in the construction and maintenance of said ditches by defendant company was the

proximate cause of the damages set forth in the four causes of action.

The question to be decided under this assignment of error is whether the provisions in said deeds relieved the defendant from all its responsibility for negligence, provided the ditches were constructed and maintained according to the then present or the future plans of the drainage district.

The question can be answered by the application of certain established principles of law relating to damages caused by negligence. This court has held in *Bunting v. Oak Creek Drainage District,* 99 Neb. 843, that a drainage district corporation, although a local corporation clothed with powers of a public nature, is liable for damages caused by its negligence in the construction of its works. In the same case this court further held that "damages caused unnecessarily by negligence and improper construction of the improvement cannot be anticipated, and a right of action accrues therefor when the damage occurs." When these legal principles are applied to the allegations in plaintiff's petition and to the evidence in support thereof, the question would seem to be answered in the negative. It was the plain legal duty of the drainage district corporation to so construct and maintain its ditches as to not work injury to the lands and crops of plaintiff, and as it did not do so it was liable for the damages. The provisions in the right of way deeds should not be construed as doing away with a duty enjoined by law and relieving the wrongdoer from the consequences of its illegal acts.

The evidence certainly tends to show and in fact appears conclusively to show, that the drainage district did not perform its duty with regard to conserving or protecting plaintiff's welfare and property in the construction and maintenance of its ditches. Many engineering errors or defects are shown by plaintiff's witnesses and in the main admitted or corroborated by the witnesses for defendant. It appears by the testimony of persons skilled in construction and engineering business of this character that for

the protection of plaintiff's lands the ditch constructed by defendant should have been diked along the lake through section 15, but that this was not done; that the angle of the ditch at the south end of the lake and 600 feet west of the southeast corner of section 15 was made so abrupt and with such a short bend that it would not permit the water to flow through it properly, the angle in the ditch acting in the nature of a dam, and that, owing to such improper construction, dirt, refuse, sediment and debris collected and held the water back, and that the defendant drainage district made no effort to open it; that the bank along the west edge of the Elkhorn river, before the ditch was constructed, was several feet higher than the usual level of the water, thus preventing the overflow of the river toward plaintiff's farm, yet the defendant cut open the bank its entire height, in this way providing an entrance for the ditch into the river and also allowed the waters of the river in turn, when high, to flow back through such entrance onto and flood plaintiff's lands; that a trap gate near the mouth of such ditch at the Elkhorn river was constructed, but that the same was inadequate and insufficient to prevent the waters of the river from flowing outward, and that, when closed, such gate acted as a dam and prevented the waters carried by the ditch from flowing into the river; that the best engineering science required that the current of the ditch at the place of its discharge should flow in the same direction as the current of the river, yet the ditch was constructed to enter the river at a right angle, the result of which was the creation of a whirlpool which tended further to dam the ditch waters and force the river waters back through the ditch onto plaintiff's lands; that the main engineering mistake, which might be regarded as the cause of all the other acts of negligence, was in failing to provide a proper direct outlet to the Elkhorn river along the extended and unbroken course of flow of the ditch which carried a large volume of water, especially when such outlet was easily available at a comparatively small expense.

The testimony of Mr. Adams, the county surveyor, and others was that the ditch should have been constructed either straight south into the depression known as the "cut-off," or should have continued south from where the ditch met the county road and turned east, that being the angle which, when constructed along either route, would have drained the waters properly and safely and prevented the flooding of plaintiff's lands; that there was a natural depression or fall of the land in both of the proposed but unused ditch corrections and outlets. Scientific and experienced witnesses in this class of work also testified that there were no engineering difficulties in the way of such construction, and that this would have obviated the objection of the ditch entering the Elkhorn river at a right angle and the depositing of silt and sediment due to the bend or angle referred to.

The record evidence seems to show beyond question that the defendant drainage company was grossly negligent and did not perform its duty; that plaintiff's welfare was entirely overlooked or disregarded; that approved engineering principles were not followed in the construction and maintenance of the ditches. It would be unreasonable to so construe the right of way deeds as to release all damages on account of the negligent and faulty construction or maintenance of the defendant's works. The drainage district was organized for the purpose of controlling the waters and improving the natural drainage of the land within such district, not to take waters from one section and make them overflow the lands lower down and thus destroy their usefulness and producing qualities.

In the case of *Boschulte v. Elkhorn River Drainage District,* 102 Neb. 451, this court states in the syllabus: "One who sells and conveys to a drainage district right of way through land owned by him, and releases the district from all claim for damages by reason of occupancy and use of the land so conveyed, may recover damages caused by carelessness and negligence in the construction of the improvement." This was a case where a drainage district with sim-

ilar, if not the same, powers as this defendant was a party and the right of way deed contained a stipulation almost identical with the one in the case at bar that "said land is to be used perpetually according to the present or future plans of said drainage district, its successors and assigns, for drainage purposes," and which further stipulates that grantor "will release all damages and claims thereto on account of and by reason of the occupancy and use of said land."

Plaintiff's petition alleged, as we have seen, the improper and negligent construction and maintenance of the ditches, and the record evidence by a fair preponderance fully sustains the allegations of his petition. The clauses in the right of way deeds claimed to grant immunity to and release the defendant from all damages should not and do not, either in reason or justice, give the drainage company the right or excuse to destroy the value and usefulness of a 480-acre farm under the name of an improvement. Courts should not be asked to construe a right of way deed given for a nominal consideration into an instrument for the confiscation without remuneration of a large and valuable farm. Such could not have been the intention of the plaintiff or the meaning of the language used, and the defendant drainage district would have hardly dared, on the solicitation of such conveyances, to have so interpreted their meaning and purpose.

The appellant further contends that the verdict of the jury was the result of passion and prejudice caused by misdirection in the instruction of the court, and that the damages assessed were extremely excessive; that, although it is conceded that the plaintiff sustained some damage on account of rains and wet weather, yet only a small part thereof was due to the negligent construction and maintenance of defendant's ditches. It is further contended that the overflow came for the most part directly from the Elkhorn river near the Union Pacific Railroad Company's bridge.

From a careful reading of the voluminous record of the

testimony contained in the bill of exceptions we find no
facts admitted or proceedings of a nature to inflame the
ordinary mind and no evidence of passion or prejudice on
the part of the jury. The record shows the negligent and
unskilful construction and maintenance of the ditches re-
sulting in large injury to the crops and lands of plaintiff,
but this is not excitable or inflammatory; that the total
amount of damages set forth in the four causes of action,
computed according to prices, acreage and figures gener-
ally most favorable to the defendant, aggregates over $28,-
000, and there is ample evidence in the record sufficient
to sustain a verdict for over $30,000, while the one rendered
by the jury was only in the sum of $17,743.

The court instructed the jury in regard to the overflow
of the Elkhorn river, claimed to have been caused by acts
of the Union Pacific Railroad Company north of plaintiff's
lands, in the following words: "The only damages, if any,
which plaintiff may recover in this action are such as re-
sulted directly from wrongful acts of defendant; and if
the jury believe that any part of such damages was caused
by the Elkhorn river overflowing its banks north of plain-
tiff's lands independently of any negligence of defendant,
the defendant would not be liable for such damages." The
jury undoubtedly took this whole matter into consider-
ation and must have made a liberal allowance for all such
overflow and damages in its verdict. There was only one
witness who testified that flood waters came north from
the Elkhorn river in the vicinity of the bridge east of
Waterloo, and he stated that "a very small amount of
water" flowed over the road to the lands of plaintiff. There
is no record evidence, however, showing that any of this
water which left the river in the vicinity of the bridge
ever injured or destroyed any of plaintiff's crops.

We can see no error in the instructions of the court,
which were undoubtedly given after a careful, painstaking
and able examination of the authorities applicable to the
issues and evidence in this case. The evidence was fully
sufficient to justify such instructions. The verdict of the

jury is sustained by the evidence and is in strict accord with the instructions. An examination of all the instructions given by the court shows that whatever doubts the court may have had regarding any questions of law were resolved in favor of defendant. An examination of the court's rulings on the admission or rejection of evidence does not disclose prejudicial error or anything that would unduly bias the jury in favor of plaintiff. The final verdict was apparently reached by the jury by giving defendant the benefit of any conflicts in the testimony by taking the lower values of products and by liberally reducing the amount of plaintiff's recovery.

In our judgment substantial justice will be found to have been reached in the proceedings of the court and in the findings of the jury, that no prejudicial errors were committed, and that the judgment of the district court should be

AFFIRMED.