EMILE REGOUBY, APPELLANT, v. DAWSON COUNTY IRRIGA-
TION COMPANY, APPELLEE.

FILED APRIL 13, 1934.  No. 28785.

*Frank M. Johnson* and *Craft, Edgerton & Fraizer,* for
appellant.

*Cook & Cook, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and
CHASE and ELDRED, District Judges.

CHASE, District Judge.

This is a suit in equity to enjoin an alleged continuing
trespass upon real estate, and to recover damages result-
ing therefrom.  From the decree of the trial court award-

ing plaintiff damages for the value of the land actually appropriated, and denying special damages and injunctive relief, the plaintiff has appealed.

This action was originally commenced on January 22, 1930, as an action at law in which the plaintiff sought to recover damages for the value of lands actually appropriated by the defendant for an irrigation canal; special damages to the remainder of the tract by way of diminution in value, and for injury to and destruction of crops and grass upon the land, alleged to have resulted from the damming up of surface waters by the canal embankment. On February 17, 1932, plaintiff filed an amended and supplemental petition, in which he appears to have abandoned his original theory. In the latter petition he invokes the powers of a court of equity for an injunction restraining the defendant from carrying on its system of irrigation through his premises, on the ground that the same amounts to a continuing trespass, and prays for general damages resulting from such trespass. In the defendant's answer to plaintiff's supplemental petition it seeks to justify its action by the claim that it is a duly incorporated and existing common carrier of water for irrigation purposes; that on March 25, 1896, the Farmers & Merchants Irrigation Company acquired, by warranty deed, a right of way for irrigation purposes across the land in question from one Alexander Regouby, father of plaintiff, and that through mesne conveyances this defendant became the owner of said right of way from the original grantee; that, in the latter part of the year 1926, the defendant constructed the irrigation canal in question; that, previous to the construction thereof, the plaintiff and defendant entered into an oral agreement whereby the right to construct the canal was granted to the defendant upon the defendant's promise to make certain improvements upon the plaintiff's land; that, in furtherance of this agreement, the canal was constructed and the improvements made, and that such agreement, in law, amounts to an irrevocable license to maintain the canal

across plaintiff's premises. The defendant denied any damage to crops resulting from the irrigation project. The plaintiff, in his reply, asserted that the right of way granted to the Farmers & Merchants Irrigation Company by his father, who was plaintiff's grantor, terminated by the permanent abandonment of the same in the year 1901; that for more than 20 years prior to the construction of the defendant's canal in 1926 the right of way of the original canal had been plowed over, continually farmed, and was wholly filled up and almost entirely obliterated.

It appears from the record that the plaintiff is the owner of the land in question, being 80 acres, rectangular in shape, which is traversed lengthwise by the defendant's irrigation canal in an easterly and westerly direction, somewhere near the middle, making the canal on plaintiff's land approximately 100 rods in length; that no attempt was made by the defendant to exercise any statutory right of eminent domain over the premises; that in the fall of 1926 the defendant began the construction of its canal, coming from the west and moving eastward. When the work approached plaintiff's premises, the defendant, through its officers, notified the plaintiff that they proposed to excavate across his land. The plaintiff, upon receipt of this notice, protested against the proposal, stating that he did not want an irrigation ditch dug through his premises. He was then notified by the officers of the defendant that they were going on through his premises with the canal and would proceed to carry out their design unless stopped by the courts. The plaintiff did not invoke the powers of the court to prevent the work, and the canal was completed through plaintiff's premises in the latter part of 1926. In 1927 irrigation waters were turned therein.

It appears that the land actually appropriated for the canal and its embankments consumed a strip about 100 rods long and 77 feet wide. It appears further that the portion of plaintiff's land lying to the north of the canal

is mostly rolling, and that prior to the construction thereof the surface waters that fell thereon were wont by nature to flow to the south through natural depressions, spreading out upon the level land, and finally disappearing by flux, percolation, and evaporation; that defendant's canal was constructed through the premises generally about the point where these undulations terminated at the edge of the plain; that by the throwing up of the embankments on the north side of the canal some of the surface waters from the north portion of plaintiff's land were dammed up, flooded back, submerging his crops, covering both them and the land with deposits of silt and drift. It further appears that in 1930 the water broke through the embankment of the canal scouring out a hole of considerable size and depth on plaintiff's premises near the western boundary thereof. Again in 1931 the embankment gave way, discharging the waters with such violence as to wash a gulch through plaintiff's land, passing therefrom, down to his farm home and filling the cellar of his residence with water.

The evidence shows without serious dispute that the Farmers & Merchants Irrigation Company in 1896 acquired a right of way by deed across these premises whereby there was conveyed a strip of land 75 feet wide. This conveyance contained the following provision: "Provided that in case said company * * * shall permanently abandon any survey or ditch made or to be made through said land, the same shall revert to and become revested in the said grantors herein, their heirs and assigns."

The defendant claims to have been the grantee of the right of way described in the original deed through mesne conveyances. The evidence also shows, practically without dispute, that in 1901 the Farmers & Merchants Irrigation company wholly abandoned its irrigation project through the land in question and never thereafter asserted it; that neither the original grantee nor any subsequent grantee through it attempted to claim a right of way through plaintiff's premises until the year 1926. From 1901 to

1926, approximately 25 years, the original irrigation project had been wholly abandoned and the right of way was farmed and used for agricultural purposes continuously in the same manner as the remainder of plaintiff's land was used; that originally some bridges had been placed across the canal and these had been removed and taken away. It will be noted that by the original conveyance that, if the company "shall permanently abandon any survey or ditch made or to be made, * * * the same shall revert to and become revested in the said grantors." There appears no evidence from which the Farmers & Merchants Irrigation Company in the original grant was divested of its right until the year 1912, eleven years after it had ceased to use the right of way for irrigation purposes. Such conduct, we must hold, amounts to a permanent abandonment of its surveys and ditch, and any right therein was lost by nonuser, hence the defendant could acquire no right in these premises by becoming the grantee of the right of way in the original deed.

While it appears that several conversations were had between plaintiff and representatives of the defendant concerning the construction of the proposed canal, and the manner in which the same was to be constructed, these conversations cannot be construed as an agreement, either express or implied, for a right of way across the premises. It does appear, however, that in these conversations, which occurred just prior to the beginning of the work, the plaintiff was informed by the defendant's officers that the canal was going to be excavated irrespective of plaintiff's objections, and if he believed his objections were well founded he would have to resort to the courts for relief. The plaintiff at that time made no attempt to stop the prosecution of the work, the canal was excavated and the irrigation project completed without paying the plaintiff anything by way of damages either for the land actually appropriated or otherwise. It further appears that after the work was completed the plaintiff, at various times before the commencement of his action,

called upon the president of the irrigation company demanding damages to his property growing out of the project, and the defendant refused to consider the plaintiff's demands.

Numerous grounds are urged by the appellant for reversal. The first that commends itself to our consideration is: Did the trial court err in refusing to grant an injunction preventing the defendant from carrying on its system of irrigation through the land in question?

According to our interpretation of the decree, the court based its findings as to this point upon the proposition that, by agreement of the parties, an irrevocable license was granted by the plaintiff to the defendant permitting it to do the things the plaintiff now complains of. We do not believe that such a conclusion is justly warranted by the evidence. Licenses sound essentially in contract and arise from an agreement of some character, either express or implied. The plaintiff's attitude at all times was that of objection rather than conciliation. No express agreement is shown, neither can one be implied from the conduct of the parties as disclosed by the record. It appears that the attitude of plaintiff, after he was informed that the defendant proposed to execute the work outlined, irrespective of his objections thereto, was that of pacifism for nearly three years. He lived on the premises and knew the canal was being excavated. He was informed that no effort would be made to ascertain his damage or pay the same unless he invoked the powers of the court in his behalf. Notwithstanding this, he allowed the defendant to expend considerable sums of money in the completion of its general system of irrigation. After the work was finished he applied to the defendant on several occasions to pay damages. He treated the whole situation as one entitling him to damages, rather than equitable relief by way of injunction. Under the statute the defendant had the power of eminent domain to condemn the plaintiff's premises and thus construct its irrigation project. The rule, not only in this state, but in many

others, is to the effect that where the owner of property knowingly permits a corporation, having power of condemnation for public purposes, to use or damage such property therefor, he is limited to his remedy in damages, and under such circumstances equity will ordinarily deny injunctive relief. *Hall v. Crawford Co.*, 94 Neb. 460; *Ensign v. Citizens Interurban R. Co.*, 92 Neb. 363; *Meyer v. City of Alma*, 117 Neb. 511. This rule is not based upon the theory of irrevocable license, but is based upon the theory of estoppel, growing out of the owner's election to resort to a law action for damages, rather than to a court of equity for an injunction. Although the action of the trial court upon this question cannot be supported on the theory of irrevocable license, we do adopt the view that the continued acquiescence on the part of the plaintiff, with full knowledge of what was being done by the defendant upon the premises, estopped him from obtaining injunctive relief.

The next question for our consideration is whether the trial court applied the proper rules for determining damages where the property of a private individual is taken or damaged for a public use. Section 21, art. I of the Constitution, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." This section of our Constitution has been construed by the court on numerous occasions, and the rule seems to be well settled that the appropriating party must pay for the value of the land actually taken or appropriated, also any depreciation in the value of the remainder of the tract caused by the construction of the work, excluding general benefits. *Chicago, R. I. & P. R. Co. v. Buel*, 56 Neb. 205. If it appears that there is a general diminution in value of the remainder of the tract caused by the construction of the public work, that is a proper element of damage, and that element of damage can only be diminished by showing that there were benefits accruing specially to the particular tract of land in question. Where such is the case, special benefits may be

offset against special damages, but in no case are general benefits, such as accrue to other lands in the vicinity as well as the land in question, properly allowable as offsets against special damages. From our interpretation of the trial court's findings, this rule was not followed. Testimony was allowed on the part of the defendant to the effect that plaintiff's land was greatly increased in value because of its adaptability, along with other lands, for irrigation purposes. The court refused any special damages to the plaintiff, upon the apparent theory that the general benefits, not only to plaintiff's land, but also to other lands along the irrigation project, increased, rather than diminished, the value of the plaintiff's land, and thus allowed such general benefits to be offset against special damages. In failing to apply this well-settled rule of damages to the facts, the court committed error.

The defendant appropriated a strip of land approximately 100 rods in length and 75 feet in width, containing about 3 acres. Along the west line of plaintiff's premises, where the canal entered, the banks of the canal broke, allowing water to escape therefrom, and in repairing that aperture, the defendant appropriated more of plaintiff's land for the purpose of borrowing earth to reconstruct its dikes. The trial court did not make any allowance to plaintiff for the land actually used in making this repair, nor for any damage to the land on the lower side of the canal occasioned by the water breaking through and washing holes therein. It appears that at one place there was a hole scoured out some 200 feet across and nearly 14 feet in depth, caused by the water breaking through the canal dike. The court should have allowed the plaintiff for the value of the land actually appropriated included within the boundary lines of the survey, and also that appropriated for the purpose of borrowing earth to reconstruct the dike. These two items are land actually appropriated. Whatever land was eroded on the lower side of the embankment by the breaking over of the water was not land appropriated for public use.

There is also evidence that on the north side of the canal, toward the eastern boundary of plaintiff's land, is a depression leading down into the general valley; that the defendant's irrigation canal crossed this depression; that in the construction of the canal it threw up a dike along the north side thereof, thus obstructing the natural flow of surface waters that fell upon the higher ground, forcing them back, submerging the plaintiff's crops in water, and leaving deposits of silt and drift. If such items of damage can be reasonably anticipated when special damages to the remainder of the tract are allowed, such an allowance of special damages will include items of the character complained of. It also appears that following a freshet the embankment on the lower side broke and the surface waters, which the defendant had collected in its canal, were permitted to discharge in a volume, scouring out a gulch, flooding the basement of plaintiff's residence and leaving deposits of débris and silt. For these items defendant sought to minimize plaintiff's damages by taking the water out of the basement and building new cement walls under the house. The courts hold that damages caused unnecessarily by negligence and improper construction of the improvement, which could not have been anticipated when the special damages to the remainder of the tract were assessed, are additional items to be recovered. *Bunting v. Oak Creek Drainage District*, 99 Neb. 843; *Hopper v. Elkhorn Valley Drainage District*, 108 Neb. 550.

The trial court denied plaintiff any damage occasioned to his crop by the overflow of his land, covering it with silt and débris, and also denied him damages for the erosion caused by the breaking over of the canal embankment. The trial court should have allowed plaintiff damages such as were fairly and justly warranted by the evidence, as follows: The value of the land actually taken by the canal, and borrowed earth used in the reparation thereof; special damages to the remainder of the tract occasioned by the project that could have been properly

anticipated, such as inconvenience in husbandry, moving of fences, drainage of ponds and sloughs, and the like, and from this item there should have been deducted whatever amount such damages were lessened by the building of bridges and the construction of fences. No offset against plaintiff's special damages should have been allowed for general benefits to the land in question which are enjoyed by all the irrigable land tributary to the canal. In addition to the above, any resultant damage occasioned by the negligence of the defendant in the construction of its canal, such as overflowing and flooding of plaintiff's land, which cannot be reasonably anticipated in the allowance of special damages. From this item there should be deducted whatever amount the defendant has minimized the same by repairing flood damage to plaintiff's residence. The trial court was correct in refusing the injunction, but committed error in misapplying proper rules of damages.

That part of the decree denying the injunction is affirmed, but in all other respects the same is reversed and the cause remanded, with instructions to compute the damages in accordance herewith.

AFFIRMED IN PART, AND REVERSED IN PART.